THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RONALD R. TURNER, Defendant-Appellant.

First District (1st Division)    No. 79-1695

Opinion filed February 2, 1981.

Bradley S. Bridge, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and Frank Castiglione, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Cook County, after a jury trial, convicting the defendant, Ronald R. Turner, of the crimes of rape and deviate sexual assault. The court entered a directed finding of not guilty as to a third charge of aggravated kidnapping. After a hearing on aggravation and mitigation, the defendant was sentenced to concurrent terms of 45 years, pursuant to the extended-term statute. Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2.

The issues presented for review are: (1) whether the prosecutor's closing argument regarding defendant's failure to call corroborating witnesses denied the defendant a fair trial; (2) whether the court erred in sentencing the defendant under the extended-term statute; and (3) whether the court erred in hearing evidence, entered at the defendant's sentencing hearing, of a separate incident regarding pending criminal charges against the defendant.

On December 8, 1978, at about 9:45 p.m., Lorraine Liddell, a 19-year-old high school student at St. Mary's High School, was traveling from her brother's house to a party at Sabrina Bartlett's house. Lorraine's brother's house was located on South Kimbark Street, about 1½ blocks from her mother's house, on East 62d Street. Sabrina Bartlett's house was located at 75th Street and Merrill. On her way to the party, Lorraine stopped at her mother's house to tell her where she was going.

Lorraine headed toward the bus stop at 63d Street and Stony Island. She testified that as she got to the corner of 63d and Dorchester, the defendant put a cold object to her neck and said, "Stop, don't move. I will blow your damn brains out." The defendant ordered her to blindfold herself with what appeared to be a dirty white sock. She was then forced to walk 1½ blocks with the defendant, who had one hand on the collar of her coat and the other hand holding a cold object to the side of her throat. They approached a car, and when she complained that she could not see,

the defendant pushed her into the car, hit her on the back of her head and told her to act like she could see, if she wanted to live. The defendant then forced her onto the floor of the car on the passenger's side, under the dashboard. He warned Lorraine not to raise her head. He said he had a .32 and he would blow her brains out. He then drove off. When Lorraine tried to strike up a conversation, and asked the defendant his name, he hit her on the back of her head and told her she was talking too much.

Lorraine testified that the defendant gave her a pencil and a matchbook with which to write her phone number, warning her that it better be right or he would take her into the forest preserve and blow her brains out. She wrote her name and telephone number, reversing the last two digits in order to protect herself, were he to look for her again, but so she would still be able to repeat the numbers if asked.

The defendant stopped the car and allowed Lorraine to remove her blindfold. She told him that she was going to a party and that people would be expecting her. Again the defendant hit her on the back of the head, saying that she talked too much. He then ordered her to take off her clothes. She started to do so, but the defendant said she was going too slow and pulled her blouse and bra off, causing her elbow to accidentally hit him in the face. The defendant then hit her across the face and took her slacks and panties off, throwing the clothes in the back seat. He then told her to lie down on the front seat and he positioned her so one of her legs was on top of the seat and the other leg was under the steering wheel. He then pulled his pants down and forced her to engage in sexual intercourse. She begged him to get off of her and stop because he was hurting her, but he would not stop. After intercourse the defendant forced her to perform fellatio on him. She did not act immediately, so he grabbed her by her hair and pulled her face down. He held her by the hair, moving her head for about five minutes. He then told her to lie down on her stomach and attempted to sodomize her. She started crying and begged him to stop. He then forced her to perform sexual intercourse again. When he was finished, Lorraine tried to escape by opening the door, but he grabbed her by the hair and hit her on her head, saying that he knew she was going to try that. He then forced her into another act of fellatio. When he was finished, he grabbed her hand and forced her to stick two of her fingers up his nose and then made her suck her fingers. He then stuck his own fingers up his nose and made her suck them. Lorraine testified that he told her to suck them and suck them good. He then forced her to lie down on the seat and engaged in sexual intercourse once again. When he was finished he told her that she had done a good job and she could put her clothes on. She had put on only her blouse when the defendant kicked open the door, threw her out of the car and tossed her clothes out.

The defendant drove away at a high speed, but Lorraine was able to

observe the license plate number of the car, VX-380. She noted that she was missing her gloves and panties.

Lorraine started running, and the first street sign she saw was 71st and Clyde. She ran to Mrs. Lucy Patterson's house, where the party was. Mrs. Patterson testified that Lorraine came into her house that night with dishevelled hair, crying and breathing heavily. Lorraine saw her friend, Sabrina Bartlett, who led her to the washroom. Mrs. Patterson observed Lorraine constantly crying and shaking. She was incoherent. Because her own telephone was out of order, Mrs. Patterson told Sabrina to take Lorraine to her house which was two doors away and call the police.

Sabrina Bartlett testified that, while they were in the washroom, Lorraine had told her that she had been raped. Lorraine would not answer Mrs. Patterson's questions, but only kept crying. Sabrina then called the police.

When the police arrived, Lorraine told them what had happened. A city of Chicago police officer observed that Lorraine was being supported by Sabrina and that she was trembling, crying, speaking erratically and that she was having a hard time catching her breath. The police took her to Jackson Park Hospital, where she was examined. On the way to the hospital, the officer ran a check on the license plate number VX-380. After leaving Lorraine at the hospital, the officer proceeded to 8200 South Harper where he saw the car with those plates. He waited there for an investigator to arrive. At the hospital, Lorraine spoke with a city of Chicago police investigator and then went home.

The investigator left the hospital and went to 8200 South Harper, where he saw the car with license number VX-380. He saw that there was a pair of panties on the floor below the steering wheel as well as a pair of brown mittens. He then went to the residence at 8200 South Harper and the door was answered by the defendant, who told the investigator that the car was his. The defendant was then read his rights and placed under arrest.

The investigator then went to Lorraine's house and brought her to the police station, on 51st Street and Wentworth Avenue, where she saw a lineup of five men. She picked out the defendant as the man who raped her. The panties and the gloves that were retrieved from the defendant's car were shown to her and she identified them as her own. The investigator also received from the defendant a matchbook with the name Lorraine and seven digits, 324-6491, written inside it. The investigator testified that he saw the matchbook personally and the number written on it was identical to Lorraine's parents' phone number except that the last two digits were reversed.

The defendant testified in his own defense. He admitted having a prior attempt armed robbery conviction. He testified that he had seen

Lorraine Liddell on two prior occasions, in October or November of 1978 at the Bobcat Lounge, located at 78th Street and Racine Avenue. On the second occasion he took her to the Zanzibar Hotel at 81st Street and Stony Island, registered in his own name, and had sex with her. On December 8, 1978, while driving his car, he saw Lorraine walking down 63d Street. He offered to drive her to the party. The defendant stopped the car and they had a conversation. They decided to have sex in the car. The defendant then parked the car near 75th Street and Clyde, where they had sexual intercourse. After that, the defendant drove Lorraine to 75th Street and Merrill.

On cross-examination, the defendant was asked to name any individuals to whom he had introduced Lorraine Liddell or any individuals who were present when he allegedly met her at the Bobcat Lounge, and the defendant did name a few of such persons.

Clyde Rapier, the clerk and recordkeeper at the Zanzibar Hotel, testified that everyone who stays at the hotel must fill out a registration card. When asked to look back at the registration cards from October 21, 1978, through December 8, 1978, Rapier testified that none of the cards contained defendant Turner's name, driver's license number or social security number.

During closing arguments, the State mentioned the fact that there were no witnesses that had testified that they had seen the defendant with Lorraine Liddell prior to December 8, 1978. After deliberations, the jury found the defendant guilty as to both counts charged.

A hearing in aggravation and mitigation was held during which the State called Carla Johnson as a witness. She testified that on July 25, 1978, while she was making a telephone call from a public phone, the defendant put a knife to her throat and forced her into his car, where he made her lie down on the floor on the passenger's side of the car. After driving for 15 to 30 minutes, the defendant stopped the car and told her to take her clothes off. The defendant told her to lie back on the car seat and he forced her into sexual intercourse. When he was done, the defendant sodomized her, and then forced her to perform fellatio until she almost threw up. Carla testified, "He told me if I threw up he was going to kill me." Then the defendant again forced Carla into sexual intercourse. When Carla tried to signal a person passing by, the defendant told her that if she tried something like that again, he would kill her. Then the defendant again sodomized her and when he was done, he forced her at knife point into some bushes. While in the bushes, the defendant again forced her into sexual intercourse. Moments later, police arrived and the defendant was arrested.

A city of Chicago police officer testified that on July 25, 1978, while on patrol, a young lady ran out of some bushes screaming that she had

been raped. When the officer called for anyone else in the bushes to come out, the defendant walked out of the bushes.

The State informed the court of the defendant's past criminal record: a 1972 conviction for attempt armed robbery, with a sentence of five to ten years; a 1968 conviction for robbery and aggravated battery; and one year probation in 1967 for auto theft. In addition, the State pointed to the fact that the defendant subjected Lorraine Liddell to several acts of humiliating sexual degradation.

The trial judge, in passing sentence, noted:

> "The facts in the case in my mind indicate clearly heinous behavior indicative of wanton cruelty. The way in which Miss Liddell was treated by this defendant in this case is shocking even to one who is used to hearing about rape cases. Repeated sexual conduct with the fingers in the nose defies normal understanding * * * And in my own conscience I must proceed upon what I believe that evidence to be. For that reason both as to rape and deviate sexual assault, I feel that an extended term is warranted. That decision is made independent of any evidence that was heard during the hearing in aggravation and mitigation. It is made upon an express finding, that the conduct of the defendant during this offense constituted heinous behavior indicative of wanton cruelty.

The judge then sentenced the defendant to 45 years on each count, with the sentences to run concurrently. The defendant now appeals these convictions and sentences.

The defendant argues that the prosecutor's closing argument to the jury regarding the defendant's failure to call corroborating witnesses denied the defendant a fair trial.

The State argues the defendant waived the issue of alleged improper prosecutor's comments by not including that issue in his motion for a new trial. In addition, the State claims the alleged improper statements were a legitimate subject of comment.

■■ By failing to include an allegation of improper argument in his written motion for a new trial, the defendant thereby failed to give the trial judge an opportunity to correct the error, if any existed. Furthermore, the defendant did not raise any objection at trial to any closing remarks of the prosecutor. Generally, a written motion for a new trial, which spells out the grounds, waives all errors not so spelled out. (*People v. Touhy* (1964), 31 Ill. 2d 236, 201 N.E.2d 425.) In any event, in the case at bar, the result would be the same were this court to consider the issue.

At trial, the defendant testified that he met the complaining witness on two occasions prior to the rape incident, that they had been together at the Bobcat Lounge on both occasions, and that they had sexual intercourse on one of those occasions. On cross-examination, the defendant was asked

the names of any people who were present at the Bobcat Lounge on any of these occasions. He testified that he introduced her to many people at the lounge and named three people who were there. During closing argument, the prosecutor commented on the fact that the defendant failed to call any of those persons at trial.

Defendant argues that the prosecutor's comment constitutes reversible error as an accused has no duty to produce a witness who is equally accessible to the State. (*People v. Rubin* (1937), 366 Ill. 195, 7 N.E.2d 890; *People v. Smith* (1966), 74 Ill. App. 2d 458, 221 N.E.2d 68; *People v. Pearson* (1972), 2 Ill. App. 3d 861, 277 N.E.2d 544; *People v. Pepper* (1971), 2 Ill. App. 3d 621, 276 N.E.2d 416.) The theory behind these cases is that to permit such comment conflicts with the doctrine of the presumption of innocence and places a burden on the accused which the law does not require. The State cannot substitute the failure of a defendant to produce a witness as substantial proof of the charge. In the case at bar, the State could have proved its case without commenting on defendant's failure to produce witnesses. It was error to make such a comment. However, the testimony of the complaining witness was credible, clear and convincing. Although the defendant characterizes the evidence in the case as "close," the trial judge was of the opinion that the evidence was "overwhelming," and we agree.

■ Lorraine's actions just after the incident, that she was trembling, crying, speaking erratically and having a hard time catching ber breath, were in conflict with the defendant's version and were never explained. Neither was her complaint of rape. Also, the matchbook containing Lorraine's parents' phone number with the last two digits reversed was never explained. In view of the testimony of the complaining witness, we view the error, if any existed, as harmless. See *People v. Rodriguez*, (1978), 58 Ill. App. 3d 562, 374 N.E.2d 904; *People v. Nelson* (1974), 16 Ill. App. 3d 976, 307 N.E.2d 165.

Defendant also contends the court erred in sentencing him under the extended-term statute. More specifically, defendant argues the trial court improperly imposed sentencing under the extended-term statute because: (1) the extended-term aggravating factors were not alleged in the information; (2) only one of the required extended-term aggravating factors was found to exist; (3) the statute is unconstitutionally vague; and (4) defendant's conduct was not heinous behavior indicative of wanton cruelty.

Defendant claims that in order to impose a greater penalty, pursuant to the extended-term statute, the aggravating factors have to be alleged and proved. In support of his position defendant cites *People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499, and *People v. Ramey* (1974), 22 Ill. App. 3d 916, 317 N.E.2d 143. However, these cases are distinguishable

from the case at bar, since the statutes involved in the cases cited raise the classification of the crime from a misdemeanor to a felony, when certain aggravating factors are present. The penalties are not discretionary with the judge. Because of this, under any of those statutes, a prior conviction becomes an element of the offense charged, and must be alleged in the indictment or information. *People v. Racinowski* (1979), 78 Ill. App. 3d 954, 397 N.E.2d 932; see also *People v. Butler* (1979), 78 Ill. App. 3d 809, 396 N.E.2d 1374.

■■ In the case at bar, the aggravating factors involved were relevant only to sentencing and did not alter the classification of the offense charged. Section 5—3.2(b) of the Unified Code of Corrections (Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005—5—3.2(b)) provides that the court may consider heinous conduct as a reason for imposing an extended-term sentence. Whether to impose an extended term is thus a discretionary matter for the trial court which need not be charged in an information. (*People v. Butler*; see also *People v. Mays* (1980), 80 Ill. App. 3d 340, 399 N.E.2d 718; *People v. Miller* (1980), 89 Ill. App. 3d 973, 412 N.E.2d 175.) It is sufficient that a defendant be notified so he can meet the aggravating allegation before the sentencing hearing. See *People v. Grier* (1980), 90 Ill. App. 3d 840, 413 N.E.2d 1316.

Defendant argues that these authorities are not controlling in light of the Illinois Supreme Court's decision in *People v. Brownell* (1980), 79 Ill. 2d 508, 404 N.E.2d 181. In *Brownell* the defendant was charged with murder and sentenced to death. The indictment was challenged because it failed to allege the aggravating factors. The court in *Brownell* was concerned with whether a defendant facing a possible death sentence was so apprised at the beginning of his trial, and the extended-term statute was not considered.

The defendant also argues that the extended-term sentencing statutes require that both aggravating factors set forth in section 5—3.2(b) (Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005—5—3.2(b)) be present before the court may impose an extended term.

Although the language of section 8—2(a) (Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005—8—2(a)) indicates the "factors" which the court may consider in imposing the extended term, it does not require that both factors be present in a given case. Section 5—3.2 indicates that either a prior conviction or heinous conduct is sufficient to impose the extended term. See *Miller; Butler.*

The defendant further contends that the extended-term statute is unconstitutionally vague. The question presented is whether the statute containing the phrase "exceptionally brutal or heinous behavior indicative of wanton cruelty" is vague. The test of whether a statute is vague is whether a person of common intelligence must speculate as to its meaning.

*Lanyetta v. New Jersey* (1939), 306 U.S. 451, 453, 83 L. Ed. 888, 890, 59 S. Ct. 618, 619; see also *Connelley v. General Const. Co.* (1926), 269 U.S. 385, 70 L. Ed. 322, 46 S. Ct. 126.

Defendant claims the term "heinous" is unreasonably vague. The term "heinous" has been defined in the American Heritage Dictionary of the English Language as, "grossly wicked or reprehensible; abominable; odious, vile" (The American Heritage Dictionary of the English Language 611 (1971)), and such definition is commonly understood as its meaning.

We conclude that the test of vagueness discussed in *Lanyetta* and *Connelley* has been satisfied here.

The defendant argues that before an extended term may by imposed, there must be some sort of physical injury to the victim beyond that which would be sufficient to constitute the crime involved. Defendant makes this argument even though he admits there is no case in Illinois which has held that there must be actual physical injury.

The State maintains that the behavior of the defendant was exceptionally brutal and heinous behavior indicative of wanton cruelty, and that *even if physical injury were required as a necessary element* before the extended term could be imposed, the injuries to Miss Liddell were sufficient to satisfy such a requirement.

The complaining witness, Miss Lorraine Liddell, was a 19-year-old girl who was hit in the head or face five times, threatened repeatedly with death, forced into three acts of sexual intercourse, two acts of fellatio and one act of sodomy.

The trial court, in passing sentence on the defendant, stated:

> "The facts in the case in my mind indicate a clearly heinous behavior indicative of wanton cruelty. The way in which Miss Liddell was treated by this defendant in this case is shocking even to one who is used to hearing about rape cases \* \* \* For that reason, both as to rape and deviate sexual assault, I feel an extended term is warranted."

■■ The court in *People v. Jones* (1979), 73 Ill. App. 3d 99, 391 N.E.2d 767, noted dictionary definitions of "cruelty" as "something that causes pain or suffering" and as a "disposition to inflict pain or suffering or to enjoy its being inflicted." (*Jones*, 73 Ill. App. 3d 99, 103.) We hold the behavior of the defendant in the case at bar goes beyond what is necessary to show "exceptionally brutal and heinous behavior indicative of wanton cruelty" as interpreted in *Jones*. Furthermore, Miss Liddell clearly and obviously sustained injuries due to defendant's heinous and cruel behavior. For these reasons, the circuit court properly imposed sentence pursuant to the extended-term statute.

The defendant also argues the trial court erred in hearing evidence, entered at defendant's hearing on aggravation and mitigation, of an

unrelated incident regarding pending criminal charges against defendant.

· The most noteworthy case dealing with the introduction of pending charges during sentencing is *People v. Poll* (1980), 81 Ill. 2d 286, 408 N.E.2d 212. There, the State introduced evidence of pending charges in aggravation, including testimony that defendant was involved in an escape from prison. The Illinois Appellate Court in *People v. Poll* (1979), 74 Ill. App. 3d 534, 393 N.E.2d 732, held that the trial court erred in admitting the evidence of the pending escape charge even though that court stated it was only considering defendant's convictions in sentencing him. However, the supreme court overruled the appellate court, and stated:

> "The State argues that the defendant's claim that his rights were violated is baseless in that the record clearly shows that the evidence of charges pending against the defendant was not relied on by the judge in imposing sentence. The State further argues that even if such evidence was considered by the judge in sentencing, there was no reversible error because evidence of pending criminal charges may, under certain circumstances, be properly introduced in aggravation during a sentencing hearing.
>
> We agree with the State's contentions. The defendant may not claim that his rights were violated by the introduction of evidence of pending charges since the judge did not consider such evidence in imposing sentence. Before announcing the defendant's sentence, the judge expressly stated that he was basing his decision 'on the record of the prior convictions of this defendant.' No mention was made of any reliance on the evidence introduced concerning the criminal charges pending at that time. Since such evidence was not used in imposing sentence, defendant's claimed error is without merit." *Poll*, 81 Ill. 2d 286, 289-90.

The supreme court in *Poll* found that it would not be reversible error if the trial judge had considered the evidence of pending criminal charges. The defendant here, however, claims this finding is dicta and not controlling since the court in *Poll* included a narrower holding that no error existed since the trial court stated it did not rely on the evidence of pending criminal charges. We find this claim unconvincing. The court in *Poll* clearly held that evidence of pending criminal charges may be properly introduced during a sentencing hearing. Even though the court based its decision on alternate grounds, neither ground can be regarded as obiter dictum. See *Scheinfeld v. Muntz TV, Inc.* (1966), 67 Ill. App. 2d 8, 214 N.E.2d 506.

■■ In the instant case, as in *Poll*, the trial court expressly stated it was not considering the evidence in question in sentencing the defendant. After

hearing the evidence presented and before passing sentence, the trial judge stated:

"In imposing sentence, I consider the matters brought to my attention during the hearing in aggravation and mitigation * * * However, I expressedly [sic] disregard that portion of the pre-sentence report that is not properly considered in aggravation and mitigation. Specifically any notations on the arrest report as to an arrest that did not result in a conviction. I do not consider that at all."

Furthermore, the court also stated:

"I feel that an extended term is warranted. That decision is made independent of any evidence that was heard during the hearing in aggravation and mitigation. It is made upon an express finding, that the conduct of the Defendant during this offense constituted heinous behavior indicative of wanton cruelty."

Because of the above, there was no error in the introduction of evidence of pending charges at the sentencing hearing.

For the above and foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.