THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES K. YOUNG, Defendant-Appellant.

Fifth District   No. 79-537

Opinion filed April 9, 1981.—Rehearing denied May 28, 1981.

John H. Reid and John F. Erbes, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William G. Schwartz, State's Attorney, of Murphysboro (Martin N. Ashley and Nicholas B. Svalina, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WELCH delivered the opinion of the court:

Charles K. Young was charged by two Jackson County informations with attempt murder, four counts of armed robbery, rape, deviate sexual assault, and aggravated kidnaping for the events of April 10, 1979. The two informations were consolidated for trial and a jury trial was had September 25 through 28, 1979, in the Circuit Court of the First Judicial Circuit, Jackson County, with the Honorable Richard E. Richman presiding. The defendant was found guilty on all eight counts. He was sentenced to consecutive and extended-term sentences totalling 110 years.

On appeal the defendant challenges the constitutionality of the extended-term provisions of the Uniform Code of Corrections and the length of his sentences.

The facts disclose that on April 10, 1979, a few minutes after 9 p.m., Charles Zimmerman was walking alone down East College Street in Carbondale on his way home from work. He was stopped by a short, stocky man who put a pistol to Zimmerman's chest and robbed him. When the robber put the gun aside and took the wallet, Zimmerman started running. Zimmerman was shot once while fleeing. In court Zimmerman identified the defendant as his assailant. The jury found the defendant guilty of the armed robbery and attempt murder of Zimmerman.

Sometime after 9 p.m. on the same evening, April 10, 1979, Tony Esposito, who lived at the Carbondale Mobile Home Park, was doing his laundry at the park's laundromat with his girl friend, hereinafter known as the complainant. A third person, John Helleny, was also in the laundromat. Two men, one tall and wearing a long coat and derby hat, and one short and armed with an automatic pistol, came into the laundromat. The two men took Esposito's wallet and Helleny's wallet and watch. The man with the pistol took the complainant by the arm and pulled her out of the laundromat to a waiting car. A third man drove. The gunman told the complainant to stay down and not move or she would be shot. He told her that he had already shot another man that night. She was forced to drink from a bottle of liquor and to disrobe. The men drove for 30 to 45 minutes before stopping under a bridge at Dillinger Road and Crab Orchard Creek, north of Carbondale. The gunman searched through the complainant's backpack looking for money. When she said that she had none he hit her, grabbed her hair, and put the barrel of the gun down her throat. Her clothes were thrown out of the car and she was forced to perform fellatio on one of the men while another simultaneously raped her. The three passed her around so that she was raped by two of them, including the defendant, and forced to perform fellatio on all three. Their activities were interrupted by the headlights and spotlight of a police car. The three men "scrambled around" inside the car and attempted to

escape down a dirt road parallel to Crab Orchard Creek. The creek had overflowed, flooding the road with water, and the car became mired down in the mud. The three men abandoned the car and fled, splashing away in the dark. The complainant ran to the police car where she was wrapped in a blanket and put in the back seat. At approximately 10:45 p.m., the defendant was arrested as he walked down a railroad track about half a mile from the bridge where the attack took place. Jeff Johnson, the tall man, was found 12 days later drowned in Crab Orchard Creek.

At trial, Helleny and the complainant identified the defendant as the gunman who entered the laundromat, robbed him, and abducted her. The jury found the defendant guilty of the armed robbery of Esposito and Helleny, and guilty of the aggravated kidnaping, armed robbery, rape, and deviate sexual assault of the complainant.

At the sentencing hearing the State argued for extended-term penalties based on the offenses having been accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. The State also argued that the sentences imposed for the offenses against Esposito, Helleny, and the complainant should run consecutively to those for the robbery and attempt murder of Zimmerman.

The court's analysis separated the events of April 10, 1979, into three sets of offenses. The first set was the armed robbery and attempt murder of Zimmerman. The court declined to invoke the extended-term statute on those counts. Citing the defendant's prior record of delinquency and criminality as a factor in aggravation and finding nothing to warrant mitigation, the court imposed a sentence of 15 years for the armed robbery and 25 years for the attempt murder of Zimmerman, the sentences to run concurrently.

The second set was the armed robbery of Esposito and the armed robbery of Helleny. The court found no factors in mitigation for these crimes. As factors in aggravation, the court considered the defendant's prior record of convictions for armed robbery and robbery and the fact that he was on parole for armed robbery at the time of the present offenses. In addition the court considered, as an aggravating factor, the armed robbery and attempt murder of Zimmerman committed by the defendant earlier the same night. For the armed robberies of Esposito and Helleny, the court sentenced the defendant to 25 years each, the sentences to run concurrently with each other, but consecutively to the sentences for the crimes against Zimmerman.

The third set was the aggravated kidnaping, armed robbery, rape, and deviate sexual assault of the complainant. For these crimes the court referred to sections 5—5—3.2(b)(2) and 5—8—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.2(b)(2) and

1005—8—2(a)), hereinafter referred to as the extended-term statute. Finding that the offenses were accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty, it imposed sentences of 60 years each for rape, armed robbery, and deviate sexual assault, and 30 years for aggravated kidnaping, to run concurrently with each other, but consecutively to the other two sets of sentences.

Defendant raises for the first time on appeal the question of the constitutionality of section 5—5—3.2(b)(2) of the extended-term statute. The supreme court has held that the defendant must raise the issue of constitutionality in the trial court in order to preserve it for appeal. *People v. Luckey* (1969), 42 Ill. 2d 115, 117, 245 N.E.2d 769, 770, *cert. denied* (1970), 397 U.S. 942, 25 L. Ed. 2d 122, 90 S. Ct. 955.

■■ Defendant had the opportunity at the sentencing hearing to attack the statute, but failed to do so. The state argued for extended terms on precisely the grounds which defendant now complains are unconstitutionally vague. Defendant argued against imposition of an extended term, not because the statute was void for vagueness, but rather because the crimes were not "accompanied by brutal or heinous behavior indicative of wanton cruelty."

We hold that the defendant has not preserved the issue of the constitutionality of section 5—5—3.2(b)(2) for review and we will not consider it. *People v. Amerman* (1971), 50 Ill. 2d 196, 197, 279 N.E.2d 353, 354.

The defendant's challenge to the propriety of his sentences has three aspects: (1) he challenges the sentences as excessive; (2) he denies the existence of "exceptionally brutal and heinous behavior indicative of wanton cruelty" accompanying the crimes and justifying extended term sentences; and (3) he attacks the consecutive sentences, asserting that all of the crimes were part of a single course of conduct.

The defendant claims it was improper for the trial court to use the crimes against Zimmerman as a factor in imposing more severe sentences for the armed robberies of Esposito and Helleny than for the armed robbery of Zimmerman. He also claims it was improper to use the crimes against Zimmerman, Esposito, and Helleny as a factor in imposing maximum sentences for the crimes against the complainant. He challenges the sentences as excessive.

The standard of review of a sentence claimed to be excessive is whether in fact the trial court exercised its discretion and, if so, whether this discretion was abused. *People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541, 545.

■■ In the instant case it was not improper for the trial court to consider the multiple offenses of April 10, 1979, as well as the defendant's prior history of delinquency and criminal activity, in imposing more severe

sentences for the crimes committed later in the evening. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(3).) We find that the trial court has not abused its discretion in imposing these sentences.

■■ The section of the extended-term statute used by the trial court requires ,that the court find that the offense was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" before it can impose an extended sentence. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2).) In *People v. Jones*, a recent Fourth District case, the defendant was sentenced on two counts of armed robbery, two counts of felony theft, and four counts of armed violence. The trial court imposed extended-term sentences, stating:

> " 'The court finds that the discharge of the weapon in close proximity to the face and head of Deputy Tjarks was an extremely brutal act, one which only by the grace of God did not result in homicide, and certainly was not due to any mercy on the part of defendant that it did not result in a homicide.' " (*People v. Jones* (1979), 73 Ill. App. 3d 99, 103, 391 N.E.2d 767, 770.)

The appellate court approved the finding, stating:

> "Clearly, the defendant created a strong possibility of injury and caused mental anguish to the victims who feared they might be killed. In fact, one of them, Janet Potts, stated in the police report that she was sure that she had been shot." (*People v. Jones* (1979), 73 Ill. App. 3d 99, 103, 391 N.E.2d 767, 770.)

In the instant case, the trial court found a strong possibility that the complainant would have been shot by the defendant, as had Zimmerman, if the police had not arrived. In addition, the trial court found that the defendant had terrorized the complainant by putting a gun down her throat. Both the mental anguish and the strong possibility of injury were present. We find that the trial court did not abuse its discretion in imposing extended-term sentences for the crimes against complainant.

The section of the Unified Code of Corrections dealing with consecutive sentences forbids the imposition of consecutive sentences "for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective * * *." Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(a).

■■ However, it has been held that "* * * where separate victims are harmed by separate criminal acts directed at the victims separately, consecutive sentences are not prohibited by section 5—8—4(a)." *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 649, 402 N.E.2d 810, 817, *appeal denied* (1980), 81 Ill. 2d 598.

The trial court in the instant case found that it was necessary in order "to protect the public from further criminal conduct by the defendant"

that consecutive sentences be imposed. Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b).

The court found that the second set of offenses against Esposito and Helleny was not a part of a single course of conduct with the first set of offenses against Zimmerman. Likewise, the court found that the third set of offenses against the complainant was not a part of a single course of conduct with the other two sets.

The court in *People v. Schlemm* quoted *People v. Lindsay* (1978), 67 Ill. App. 3d 638, 647, 384 N.E.2d 793, 800, with approval: " 'We do not believe that the single course of conduct rule was adopted to free a defendant from the consequences of a series of crimes, involving separate acts, committed against several individuals." (82 Ill. App. 3d 639, 649.) Nor do we. We find that the trial court did not abuse its discretion by making the three sets of sentences run consecutively. Accordingly, we affirm.

Affirmed.

KASSERMAN, P. J., and HARRISON, J., concur.