THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES P. FIEBERG, Defendant-Appellant.

First District (4th Division)  No. 80—951

Opinion filed August 19, 1982.

James J. Doherty, Public Defender, of Chicago (Frank P. Madea and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, J. Mark Lukanich, and Bruce A. Cardello, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ROMITI delivered the opinion of the court:

Following a jury trial defendant, James P. Fieberg, was convicted of possession of burglary tools, attempted burglary, burglary, aggravated battery, and robbery but was acquitted of attempted murder. Defendant was sentenced to prison terms of three years for possession of burglary tools, three years for attempted burglary, seven years for burglary, five years for aggravated battery, and an extended term of 14 years for robbery. The aggravated battery sentence was made consecutive to the robbery sentence. In addition the trial court specified that all these sentences would be consecutive to certain prison terms the defendant had been serving in Michigan before he escaped from prison, as well as being consecutive to any term the defendant

might receive for escape in Michigan.

On appeal defendant contends (1) the trial court improperly instructed the jury that defendant had confessed to the robbery; (2) the trial court erred in finding that the robbery was accompanied by acts which were so exceptionally brutal or heinous as to be indicative of wanton cruelty and imposing an extended sentence on those grounds; (3) the trial court erred in sentencing defendant to consecutive sentences for aggravated battery and robbery when those two offenses arose from a single course of conduct with no change in defendant's criminal objective.

We affirm defendant's convictions but reduce his sentence for robbery and modify his sentence for aggravated battery to make it concurrent with the other sentences.

The pertinent trial testimony was as follows. Wilmette Police Officer Terrance Fitzpatrick testified that while on patrol on the evening of October 10, 1978, he observed the defendant standing behind the opened screen door of the alley entrance to a business located at 919 Ridge in Wilmette. The defendant walked past the officer's squad car, ignoring his orders to halt, and fled.

Shortly thereafter defendant was seen on the grounds of Mallinckrodt College by Wilmette Police Officer John Leydon, who also testified. Leydon repeatedly ordered the defendant to lie down but instead defendant began walking towards Leydon. Defendant told Leydon he would not stop, that he was afraid he was going to be hurt and only wanted to leave. He kept approaching Leydon, who kept backing away. Officer Fitzpatrick arrived at this point and successfully ordered defendant to stand up against a tree. Fitzpatrick approached defendant and attempted to force open one of his hands, which was formed into a fist. Defendant grabbed him and sprayed his face with a toxic chemical, apparently Mace. The chemical entered Fitzpatrick's eyes, causing them to burn, and also entered his nose and mouth, making breathing difficult. Fitzpatrick buried his head in defendant's stomach and grabbed his legs in order to bring him to the ground. Defendant reached over Fitzpatrick's back and removed the officer's gun from its holster. Fitzpatrick heard two shots as he fell to the ground; it was his belief from the feel of defendant's arm on his back that those shots were fired at Officer Leydon. Officer Leydon testified that those two shots were fired at him as he stood about six to eight feet away but both shots missed him. Fitzpatrick testified that at this point he grabbed defendant's gun-hand by the wrist and with his other hand grabbed the barrel of the gun. Defendant, with his finger on the trigger, kept bringing the gun down in the direction of

Fitzpatrick's face. Fitzpatrick saw that defendant was pulling the trigger back and so made a jerking motion which moved the barrel back over his head. Defendant pulled the trigger and the gun went off. Fitzpatrick hit defendant twice in the face as hard as he could. Defendant got up with the officer again holding on to party of the gun. According to Fitzpatrick defendant kept pointing the gun down at Fitzpatrick's face with his finger on the trigger. Fitzpatrick again pushed the gun up and defendant fired it. At this point the gun was about 18 inches from the officer's face. Fitzpatrick kicked defendant in the groin and defendant broke loose and ran. Fitzpatrick, who had rolled away, heard eight to 10 shots. He initially joined in the chase but had difficulty seeing and was taken to the hospital. He testified that in addition to the spraying of his face he injured the knuckle and one finger of his left hand during the struggle for the gun. On cross-examination he admitted that in testimony before the grand jury he stated that defendant fired two shots at Leydon, two shots at him, and then, as defendant fled, two shots at both officers. He conceded that in fact he did not know if defendant fired more shots after the first four.

Officer Leydon testified that after defendant fired the first two shots at him he lay in the grass where he could not see the struggle. He heard two more shots and then saw defendant backing away with the gun in his hand. Defendant fired once in Leydon's direction and then ran. Leydon got up and fired six shots at the fleeing defendant. He conceded on cross-examination that he had erroneously stated in a police report that defendant fired two shots at him as defendant fled.

Defendant was captured by other police officers in the area. He was found to be carrying $9.50 in quarters, $2.20 in dimes, $1.25 in nickles, and two single dollar bills as well as a roll of 10-cent stamps and a left-hand glove. The coins and stamps were determined to have been taken in the burglary of a store at 915 Ridge. At the store police found a pair of vise grips locked on the alley door. On the ground they found a metal pry bar and a metal retaining ring from the door lock. At the store located at 919 Ridge part of the door lock was found on the stoop. Face plates from the doors of both stores were also found in the area.

The police also searched the area where the struggle took place and located Officer Fitzpatrick's gun with five of the six bullets discharged. Also in the area they found a screwdriver, a can of Mace, and a right-hand glove. The left-hand glove recovered from the defendant was found to contain certain substances commonly left by the firing of a gun. No such substances were found on Officer Fitzpa-

trick's shirt or jacket.

Defendant took the stand and admitted to having burglarized the business at 915 Ridge and attempting to burglarize the business at 919 Ridge. He admitted to having used the vise grips and also to possessing the pry bar, screwdriver, and gloves. His account of the encounter with Officers Leydon and Fitzpatrick was substantially similar to their accounts with the following important differences. When he removed the gun from Fitzpatrick's holster he fired it into the ground with the intent of scaring the officers so he could escape. He did not even see Officer Leydon after he sprayed Fitzpatrick with Mace. After firing the first two shots he was knocked to the ground and Fitzpatrick grabbed the gun in the manner he had described. The gun discharged twice as Fitzpatrick yanked it in different directions. Defendant was not trying to point it at Fitzpatrick. Defendant then got up and was kicked in the groin at which point the gun again discharged. He then ran, discarding the gun, and climbed the wall of the college. He was arrested by other police officers in the area. Defendant denied ever intending to shoot and kill Leydon or Fitzpatrick.

I

■ We find no merit to defendant's contention that the trial court erred in instructing the jury that there was evidence that defendant had confessed to robbery. It is true, as defendant notes, that the robbery indictment specified that defendant had taken the gun "with intent of permanent deprivation," but this was mere surplusage. (*People v. Simpkins* (1971), 48 Ill. 2d 106, 268 N.E.2d 386.) Intent to permanently deprive a person of the use of his property is not an element of the crime of robbery. (*People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244.) When defendant admitted that he had taken the gun from Officer Fitzpatrick during their struggle he confessed to having committed a robbery. Indeed it is noteworthy that at trial defense counsel, in closing argument to the jury, also conceded that defendant had admitted committing the robbery. Thus the trial court did not err in so instructing the jury.

II

We next consider the propriety of the 14-year extended-term sentence imposed on defendant for robbery. Section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2) provides in pertinent part:

"(a) A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by

Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present."

In this cause the trial court relied on the factors stated in section 5—5—3.2(b)(2) (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2)):

"When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

On this question the trial court stated:

"Here you have a police officer who's maced, who has an impairment of the functions of his bodily organs, namely, his nose and eyes, clinging desperately to the barrel of his own revolver while it's being discharged on at least two occasions and being discharged by the defendant's own admission in the immediate proximity of the officer, because he fired into the ground. Obviously, that fact had to be known; because he wouldn't testify to that fact; and, therefore, the Court is cognizant of that fact.

Then, again, we have the defendant armed with mace who was the aggressor at all times, for the reasons I've already indicated.

Therefore, this Court finds that the defendant's conduct was accompanied by exceptionally brutal or heinous behavior. Also, the Officer testified that his knuckles were skinned and bleeding."

Clearly the trial judge relied substantially on the facts of the macing of Officer Fitzpatrick. But those facts formed the basis of defendant's conviction for aggravated battery. In *People v. Evans* (1981), 87 Ill. 2d 77, 87, 429 N.E.2d 520, 525, it was held that by the plain terms of the statutes at issue here "the most serious offense of which the offender is convicted must be accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." In so holding the court recognized that this legislative scheme could result in insulating a defendant from receiving an extended sentence for an offense which was accompanied by wanton cruelty simply because he was also convicted of a more serious offense not accompanied by such acts. Here the most serious offense for which defendant was convicted was robbery. Yet the trial judge, in sentencing defendant to an extended term, relied in great part on the facts establishing a lesser offense that preceded the robbery, aggravated battery. We find this to have been improperly considered as a factor in light of the holding of the *Evans* court. Moreover we do not find that the remaining factor cited

by the court, the shots fired during the struggle for the gun, sufficed in itself to support an extended-term sentence.

The State cites as dispositive a case relied on by the trial court in citing this factor, *People v. Jones* (1979), 73 Ill. App. 3d 99; 391 N.E.2d 767. In *Jones* defendant's sentences were held to have been properly extended where he had, *inter alia,* fired a gun in such close proximity to a deputy's head as to cause powder burns to the deputy's face and hand as well as causing the hand to bleed. But in addition to this act the defendant had pointed the gun at several restaurant patrons and then fired repeatedly into the air despite the fact that they were cooperating with him. The court also cited the fact that one witness stated she thought she had been shot when the shots were fired. Thus in *Jones* the physical injury to the victims as well as the mental anguish suffered by them was demonstrably greater and better established than with the acts accompanying the robbery in this cause. Here the testimony of the two officers that defendant had fired or pointed the gun at them was clearly rejected by the jury for defendant was acquitted of charges that he attempted to murder these men. The jury apparently accepted defendant's testimony that the first two shots were fired into the ground and the remaining three shots were inadvertently caused by the jerking of the gun and the blow defendant received.

As we stated in *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 651, 402 N.E.2d 810, 818:

"We do not interpret the legislative scheme in regard to extended term sentences to intend that an extended term would be available under section 5—5—3.2(b)(2) unless the degree of brutality or heinous behavior was 'exceptional.' "

A review of other cases in which extended-term sentences have been approved on the grounds relied on here illustrates the exceptional nature of the acts necessary to invoke such punishment. In *People v. Winston* (1982), 106 Ill. App. 3d 673, 435 N.E.2d 1327, the victim was beaten until unconscious and then strangled to death; in *People v. Eckles* (1980), 83 Ill. App. 3d 292, 404 N.E.2d 358, the defendant told his wife by phone he would kill her after his reconciliation efforts were rebuffed and he then drove to her workplace, shot her twice and when she fell shot her four more times; in *People v. Warfel* (1979), 67 Ill. App. 3d 620, 385 N.E.2d 175, the victim was grabbed by a stranger on the street, thrown to the ground, and had her face beaten against the sidewalk; and in *People v. Young* (1981), 96 Ill. App. 3d 426, 420 N.E.2d 1051, the victim was kidnaped, stripped, beaten, had a gun forced down her throat, and then subjected to multiple acts of

rape and sexual abuse by three men. We find that the acts which accompanied the robbery in this cause were demonstrably not comparable to those sorts of acts and do not constitute the exceptionally brutal or heinous behavior necessary for imposition of an extended term under the statute. Accordingly we reduce defendant's sentence for robbery to the maximum permissible term of seven years. See *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 402 N.E.2d 810.

## III

Finally we consider the propriety of the trial court's order that defendant's sentence for aggravated battery be served consecutively with his sentence for robbery. Section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(a)) provides:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, in which event the court may enter sentences to run consecutively."

In applying this test the courts have looked to whether the crimes at issue were independently motivated. (*People v. Ingram* (1980), 84 Ill. App. 3d 495, 405 N.E.2d 864.) That same test was used in *People v. Whittington* (1970), 46 Ill. 2d 405, 265 N.E.2d 679, at a time when independent motivation was held necessary to permit convictions for separate crimes occurring during one course of conduct. In *Whittington* defendant escaped from prison, commandeering a State-owned car in doing so. He pleaded guilty to escape and theft (of the car) and received concurrent terms on those convictions. On appeal the Supreme Court of Illinois held that defendant stole the car on prison grounds as part of his plan of escape so that the theft was not independently motivated or otherwise separable from the conduct constituting the offense of escape. Accordingly defendant's theft conviction was reversed. Here it is apparent that defendant's act of macing Officer Fitzpatrick and the acts of taking the gun and firing it were all motivated by his criminal objective of evading capture. Indeed the trial court's own finding on this point supports our view. The court stated:

> "This Court finds there was no single course of conduct. There was the burglary, the flight from the burglary, a completely unrelated incident at the Mallinckrodt College, the escape from

this college, the apprehension on the other side of the wall on Harvard Street. That's five incidents, really."

But the "incident" at the college in fact included both the aggravated battery and the robbery. Thus the trial court apparently saw both those crimes to be part of a single course of conduct. On appeal the State contends that defendant, having failed in his bid to escape by macing Officer Fitzpatrick, then took the gun in an effort to injure the officers, knowing he could not escape. This overlooks the fact that defendant did effectuate his escape from these two officers. But more importantly it represents an attempt to find in defendant's actions a motivation which the jury clearly rejected by acquitting him of the charges of attempted murder. Accordingly, having found that there was no basis for the trial court's imposition of consecutive sentences for these acts, we modify the court's sentence for aggravated battery to a concurrent five-year term.

The judgment of the trial court is affirmed as modified.

JOHNSON, P. J., and LINN, J., concur.