THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERT HOLIDAY, Defendant-Appellant.

First District (4th Division)   No. 83—2483

Opinion filed January 24, 1985.

Steven Clark and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Frank G. Zelezinski, and Frank S. Geldea, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ROMITI delivered the opinion of the court:

Defendant, Albert Holiday, was tried before a jury and was convicted of murder, armed robbery and three counts of aggravated battery, receiving concurrent extended-term sentences of 80 years, 60 years, and 10 years for those respective crimes. On appeal defendant contends (1) he was not proved guilty of murder; (2) the court lacked the authority to sentence him to extended terms for armed robbery and aggravated battery; (3) the evidence did not support imposition of an extended term for murder because that offense was not accompanied by exceptionally brutal or heinous behavior.

We affirm defendant's convictions but vacate all the sentences imposed and remand the cause for a new sentencing hearing.

At trial four State witnesses, Gregory Anderson, Danny Harris, Leopold Blakley and Gwendolyn Warren, testified that on October 9, 1982, they were participants in a dice game in a second-floor apartment at 2145 West Lake Street in Chicago. About 20 to 25 people were present, including several children. At about 3:30 p.m. the defendant, who had been known by the witnesses for periods ranging from five to 10 years, entered the apartment for a brief period of time and then left, telling an individual named Junior Gray that he would be back. At about 4:30 p.m. Junior Gray opened the door to the apartment, allowing two armed and masked men to enter. All four witnesses testified that they were able to recognize the defendant as one of the men because his mask failed to cover all of his facial features. Defendant was also wearing the same clothes he had worn in his first trip to the apartment. All four witnesses subsequently identified the defendant from his driver's license photo and from a photo array.

While defendant's masked confederate remained near the front

door the defendant moved into the apartment, brandishing his gun (identified by Harris and Anderson as a .38-caliber weapon) and stating, "Is there any heroes in the house." It is undisputed that he then opened fire, wounding Harris, Blakley, and Anderson. Danny Harris also testified that he saw defendant shoot at Dan Daniels from a distance of about 10 feet and then saw Daniels fall. Gwendolyn Warren testified that she saw Daniels shot in the chest by a bullet fired by the defendant, causing Daniels to fall back against the wall. On cross-examination, when asked if she actually saw Daniels struck by a bullet, she stated that he would not have stumbled if he had not been shot.

It is undisputed that during the course of these events Junior Gray was picking up money from the floor and from the dice table, which had been knocked over. Gregory Anderson also testified that Gray "snatched" some money from his hand.

Gwendolyn Warren testified that after Daniels was shot he pulled out a gun and fired toward the front door. He then tucked the gun back into his pants and walked out the front door. No witness directly testified that Daniels left with any money, but there was testimony that he had won a lot of money in the dice game. Daniels' body was found by the police shortly after the shooting on the third floor of the building, lying on the steps leading up to the fourth floor. No money or weapon was recovered from his body or the area around it.

The pathologist who examined the body testified that Daniels had been struck by two bullets in the chest. These bullets passed downward through his liver, diaphragm, bowel and abdomen, with one bullet exiting his body through the back. The other bullet was recovered and was described by the pathologist as a medium-caliber bullet of approximately .38-caliber size. According to the pathologist, death had resulted from massive internal bleeding in the chest and abdomen.

The police examined the apartment shortly after the shooting. They did not find any weapons, bullets, or blood.

After jury deliberations defendant was found guilty of the murder of Daniels, the armed robbery of Anderson, and the aggravated battery of Anderson, Harris and Blakley. He was found not guilty of the attempted murder of those latter three individuals and was also found not guilty of the armed robbery of Harris, Daniels, and Blakley.

## I

Defendant's contention that he was not proved guilty of murder beyond a reasonable doubt is based primarily on his assertion that no witness actually saw him shoot Daniels. Defendant then notes that no blood was found in the apartment where the shooting took place and

that no money or gun was found on Daniels several flights of stairs from the apartment. Defendant contends that this constituted circumstantial evidence that Daniels was shot and robbed by another individual after Daniels fled the apartment. But in fact several of the State's witnesses testified that they saw the defendant shoot Daniels. Danny Harris testified that defendant pointed a gun at Daniels, shot at Daniels, and Daniels then fell. Gwendolyn Ward testified that she saw defendant shoot Daniels in the chest, causing Daniels to fall back against a wall. The State's evidence also established that Daniels was shot with a .38-caliber gun, the same caliber as the gun that Harris and Anderson testified was used by the defendant. It should also be noted that the absence of blood in the apartment did not contradict the State's version of the shooting in light of the evidence that Daniels died as the result of massive internal bleeding and that he left the apartment almost immediately after being shot. Thus, this case is not analogous to that of *People v. Holsapple* (1975), 30 Ill. App. 3d 976, 333 N.E.2d 683, cited by defendant, in which a murder conviction, based solely on circumstantial evidence, was reversed based on what the reviewing court found to be strong circumstantial evidence that another individual had committed the crime. The State in this cause relied on eyewitness testimony that the defendant committed the murder.

■ Defendant has also noted that the testimony of those eyewitnesses was conflicting concerning such details as where individuals were located in the room and the order in which the victims were shot. However these inconsistencies merely constituted matters for the jury to consider in evaluating the credibility of the witnesses. (*People v. Thomas* (1981), 96 Ill. App. 3d 443, 421 N.E.2d 357.) A criminal conviction will be reversed for evidentiary insufficiency only where the evidence is so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. (*People v. Zolidis* (1983), 115 Ill. App. 3d 669, 450 N.E.2d 1290.) We find no such basis for reversal on this record.

## II

■ Defendant correctly contends that it was error for the trial court to impose extended-term sentences for the offenses of aggravated battery and armed robbery. An extended-term sentence may be imposed only for the class of the most severe offense of which a defendant is convicted. (*People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569; Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2.) Thus, in this cause an extended term was permissible only for murder, the most se-

rious felony of which defendant was convicted. Accordingly, we vacate defendant's sentences for armed robbery and aggravated battery.

### III

■ We also agree with the defendant that the trial court erred in imposing an extended-term sentence for murder. The trial court apparently relied on section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(2)), which permits imposition of an extended term when a felony is "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." We have construed this statute as not permitting imposition of an extended term except when the degree of brutality or heinousness is exceptional. (*People v. Fieberg* (1982), 108 Ill. App. 3d 665, 439 N.E.2d 543; *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 402 N.E.2d 810, *cert. denied* (1981), 449 U.S. 1127, 67 L. Ed. 2d 115, 101 S. Ct. 948.) In *Fieberg*, we reviewed a number of cases in which extended-term sentences were found to be proper, noting that those cases included such facts as a victim's being beaten until unconscious and then being strangled to death, a stranger grabbing a victim on the street and then beating her face on the sidewalk, and a victim's being kidnaped, stripped, beaten, and then being subjected to multiple acts of rape and sexual abuse by three men. More recent cases have involved such acts as causing a six-year-old girl to become intoxicated and then sexually attacking her in a manner causing a severe vaginal laceration (*People v. Strait* (1983), 116 Ill. App. 3d 110, 451 N.E.2d 631), and a stepmother beating her four-year-old son over a period of months, immersing his hands in scalding water and then failing to seek medical attention, resulting in his death. *People v. Cox* (1983), 113 Ill. App. 3d 136, 446 N.E.2d 1280.

In this cause the defendant entered a room where a dice game was being played, brandishing a gun, and then shot the deceased twice in the chest. For these acts he was properly convicted of murder. But we find no acts of exceptional brutality or heinousness in this conduct. To the extent the State attempts to rely on defendant's actions in shooting the other victims, actions for which he also received lesser criminal convictions, this reliance is improper, as it is the most serious offense which must be accompanied by exceptionally brutal or heinous behavior, and the State may not rely on the nature of defendant's actions which have resulted in other convictions. (*People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520; *People v. Fieberg* (1982), 108 Ill. App. 3d 65, 439 N.E.2d 543.) Without deprecating the seriousness of the defendant's conduct in this cause, we do not find

that his conduct in shooting the deceased constituted such exceptional brutality or heinousness as to permit imposition of an extended-term sentence. Accordingly, his sentence for murder must also be vacated.

The defendant's convictions are affirmed, but his sentences are vacated and the cause is remanded for a new sentencing hearing.

Convictions affirmed; sentences vacated and cause remanded.

LINN and JOHNSON, JJ., concur.