THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY KANE, Defendant-Appellant.

First District (4th Division)   No. 84—2582

Opinion filed February 13, 1986.

LINN, P.J., dissenting in part.

Steven Clark and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Dean P. Karlos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JIGANTI delivered the opinion of the court:

After the defendant pleaded guilty to three counts of murder and one count of armed robbery, he was sentenced to concurrent extended prison terms of 80 years for each count of murder, and 60 years for armed robbery. He has now appealed from the trial judge's denials of his motions to withdraw his guilty pleas and have his sentences reduced. He argues first that he was not advised of the factors making him eligible for an extended-term sentence; second, that the trial judge erred in imposing an extended term because his acts were not "exceptionally brutal and heinous"; third, that his extended-term sentence was grossly disproportionate to that of his codefendant; fourth, that the trial judge erred in sentencing him on all three counts of murder; and fifth, that his extended-term sentence for armed robbery must be reduced or vacated, given his accompanying conviction for the more serious offense of murder.

At the hearing on the defendant's guilty plea, he was told by the trial judge that he could be sentenced for murder to natural life imprisonment without parole, or to a 40- to 80-year extended term if there were "aggravating circumstances," as well as to six to 30 years for armed robbery. He also was advised that he could receive a 30- to 60-year extended term for armed robbery, as well as consecutive sentences for the offenses totalling 140 years. After the judge admonished him of his rights, he pleaded guilty. The stipulated testimony of several Chicago police officers established that the 17-year-old defendant had orally admitted that he and his codefendant talked about robbing a taxicab driver, and also "went out to look for some [rival street gang members] to kill." Although the defendant admitted that he and his codefendant then took a gun, entered a cab, announced a

"stickup," shot the driver in the neck, took his money, and fled, he stated that while he did handle the gun, it was his codefendant who actually shot the man. However, the codefendant said the defendant did the shooting, the revolver later was found with the defendant's coat, the gun belonged to the defendant, and a chemist's stipulated testimony indicated that gunshot residue was found on only the defendant's hands.

After the defendant was found guilty, he read a letter he had written into the record, and his mother also read a statement. The record further indicates that the defendant had at least two prior juvenile burglary adjudications. Defense counsel sought a minimum sentence of 20 years, and the State asked for the maximum penitentiary term. The judge, terming the murder "terrible" and "outrageous," found that the "killing was brutal and heinous and wantonly cruel" and that the evidence indicated that the defendant shot the victim; he then imposed concurrent extended-term sentences of 80 years for murder and 60 years for armed robbery.

█ Initially, even if we assume for the sake of argument that this issue has not been waived, we reject the claim that the defendant's motion to withdraw his guilty plea should have been granted, because the trial judge failed to inform him of the factors in aggravation that could justify an extended-term sentence. We find neither authority nor rationale to support the proposition that a trial judge is obliged to do so.

█ However, we must agree with the defendant that the trial judge erred in imposing an 80-year extended-term sentence. In this case, the testimony at the hearing on the defendant's guilty plea indicated that the deceased taxicab driver was robbed and shot in the neck, and the codefendants previously had discussed robbing a cab driver and killing a rival street gang member. However, in imposing the extended-term sentence, the trial judge relied on section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(2)), which permits such a sentence when a felony is "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

There is no question that the murder here was unprovoked, and that the facts warranted a severe sentence. And there is no question that determining whether or not particular criminal acts are so "exceptionally" brutal or heinous that they deserve the imposition of an extended-term sentence is not an easy, exact or gratifying task for any court. Yet, the difficulty of making such determinations does not obviate the necessity for making them. And here, we simply do not

find that the defendant's acts, though undeniably deplorable, were so "exceptional" in nature as to justify the invocation of an extended-term sentence. In reaching this conclusion, we rely not only upon recent case law in which this court has vacated or modified extended-term sentences under similar circumstances (see, *e.g., People v. Holliday* (1985), 130 Ill. App. 3d 753, 474 N.E.2d 1280; *People v. Reynolds* (1983), 116 Ill. App. 3d 328, 451 N.E.2d 1003; *People v. Fieberg* (1982), 108 Ill. App. 3d 665, 439 N.E.2d 543; *People v. Lieberman* (1982), 107 Ill. App. 3d 949, 438 N.E.2d 516; *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 402 N.E.2d 810), but also upon the sorts of cases where reviewing courts have, by contrast, found criminal acts so exceptional as to warrant approving extended-term sentences (see, *e.g., People v. Strait* (1983), 116 Ill. App. 3d 110, 451 N.E.2d 631 (forcing child to become intoxicated and then sexually attacking her and causing severe vaginal laceration); *People v. Cox* (1983), 113 Ill. App. 3d 136, 446 N.E.2d 1280 (beating child over prolonged period, immersing his hands in scalding water, and failing to get medical attention, thereby causing severe cuts and bruises, and the child's death); *People v. Winston* (1982), 106 Ill. App. 3d 673, 435 N.E.2d 1327 (victim repeatedly beaten with ashtray into unconsciousness, then strangled to death); *People v. Clark* (1981), 102 Ill. App. 3d 414, 429 N.E.2d 1255 (victims' home invaded, gun held to infant son's head as threat, wife ordered to disrobe and forced to commit act of deviate sexual assault while husband and son watched, family tied and left on floor, and defendant stated, "Thanks for the hospitality"); *People v. Young* (1981), 96 Ill. App. 3d 426, 420 N.E.2d 1051 (victim was kidnaped, stripped, and beaten, had gun forced down her throat, and was raped and sexually abused by three men); *People v. Turner* (1981), 93 Ill. App. 3d 61, 416 N.E.2d 1149 (victim hit in head numerous times, repeatedly threatened with death, degraded, and forced to commit multiple acts of sexual intercourse, fellatio and sodomy); *People v. Gray* (1979), 80 Ill. App. 3d 213, 399 N.E.2d 206 (victim raped, threatened with knife, robbed and stabbed 33 times); *People v. Warfel* (1979), 67 Ill. App. 3d 620, 385 N.E.2d 175 (victim was thrown to ground and had her face beaten against sidewalk)). We believe that, especially given the defendant's youth and expression of regret before sentencing, this result is proper here. (*Cf. e.g., People v. La Pointe* (1982), 88 Ill. 2d 482, 431 N.E.2d 344.) Therefore, it is our determination that the defendant's sentence for murder must be reduced to the maximum permissible non-extended-term sentence of 40 years' imprisonment. See *People v. Fieberg* (1982), 108 Ill. App. 3d 665, 439 N.E.2d 543.

Given this conclusion, we find it unnecessary to consider in detail the defendant's claims that the trial judge imposed a sentence grossly disparate to the 20-year sentence received by his codefendant, or failed to consider his rehabilitative potential, except to state that we now find these additional arguments as to sentencing unpersuasive and irrelevant, respectively.

However, as the State concedes, two of the defendant's three convictions for murder also must be vacated (see *People v. Mack* (1984), 105 Ill. 2d 103, 473 N.E.2d 880), and the defendant's extended-term sentence for armed robbery must be vacated, and modified to the maximum 30-year statutory term. See *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.

Accordingly, the defendant's conviction for one count of murder is affirmed (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(1)), but the sentence is reduced to 40 years; the two other judgments for murder are vacated (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(2), 9—1(a)(3)); and the conviction for armed robbery is affirmed, and that sentence reduced to 30 years.

Affirmed as modified in part; vacated in part.

JOHNSON, J., concurs.

PRESIDING JUSTICE LINN, dissenting in part:

I cannot agree that the imposition of an extended-term sentence for murder here was erroneous. The evidence supported the trial judge's finding that the defendant, with premeditation and in cold blood, shot and killed the victim while robbing him. Under these circumstances, despite the defendant's youth and expression of regret, I cannot conclude that the determination that his actions were exceptionally brutal and heinous was an abuse of discretion. (See *People v. La Pointe* (1982), 88 Ill. 2d 482, 431 N.E.2d 344.) Similarly, where the judge found that the defendant actually shot the victim, we do not believe the difference between his 80-year murder sentence, and his 23-year-old codefendant's 20-year sentence, was so disparate as to constitute an abuse of discretion. (See *People v. Moon* (1982), 107 Ill. App. 3d 568, 437 N.E.2d 823.) Nor does the record support the claim that the trial judge failed to consider the defendant's rehabilitative potential.

I would affirm the sentences imposed by the trial court.