THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES A. KULPA, Defendant-Appellant.

First District (1st Division)    No. 80-1159

Opinion filed December 14, 1981.

Albert Brooks Friedman and Frederick M. Ellis, Jr., both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, George M. Velcich, and Thomas J. Murphy, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant James A. Kulpa was charged with attempt murder (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 8—4), armed violence (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—2, 12—4(a)), and three counts of aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4). After a jury trial defendant was found not guilty of attempt murder, not guilty of armed violence, and guilty of aggravated battery. The trial court found that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, and sentenced defendant to a term of eight years imprisonment under the extended-term provision of section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(2)). On appeal defendant urges that: (1) the court abused its discretion in sentencing him to eight years imprisonment; (2) the court erred in failing to give requested jury instructions and jury verdict forms

regarding aggravated battery; and (3) section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(2)) (the extended-term provision, hereinafter section 5—5—3.2(b)(2)), is unconstitutional.

For the reasons set forth herein the judgment of the circuit court is affirmed.

At trial, Arthur Pauls, the brother-in-law of defendant, testified that on October 23, 1978, he resided with his sister Doreen Kulpa at 3825 West 105th Street. At that time Doreen was married to defendant, but was separated from him and in the process of getting a divorce. There was a court order in effect stating that defendant was not to come to the house in which Pauls and Doreen resided. Pauls arrived home from work a little after 4 p.m. with Ronald Galvin, a working partner of his. While they were sitting in the kitchen defendant drove up into the driveway. Pauls went out to defendant's car and told him not to even get out of the car, and that he had broken the court order. Defendant stated that he had every right to be at the house. Pauls' dog jumped into defendant's car, and defendant asked him to get the dog out of the car. Pauls called the dog, and as the dog jumped out of the car, defendant kicked the dog in the head. Pauls told defendant he was going to call the police. As he turned to go into the house, defendant grabbed him from behind and threw him up against the car. Pauls threw a punch at defendant and hit him in the mouth. Pauls then fell against the car and defendant charged him. Pauls felt a pain in his chest and saw that he was bleeding. He saw a knife in defendant's hand. He fell down and attempted to crawl to the house. At this time defendant was standing over him punching and stabbing him. He continued to crawl to the house, and defendant continued to hit and stab him in the face, the head, and the chest. Pauls rolled over on his back and tried to kick defendant. He could not see because his eyes were filled with blood. He put his hands over his eyes to protect himself. Defendant continued to follow him. He turned over and tried to crawl again, and defendant continued to stab him. Finally Pauls stopped. The next thing he remembered was someone trying to stop the bleeding. The next day he awoke in the hospital in the intensive care unit. He remained in the intensive care unit for seven days and in the hospital for two weeks. He suffered multiple stab wounds to the face, neck, arms, back of the head, wrists, and shoulders. He had a collapsed lung and a couple of bruises. He had 26 wounds to his body. At the time of trial he was still receiving treatment. His lung was being drained periodically as it filled up with fluid. The testimony of Ronald Galvin, Sherry DePass, and Martin DePass corroborated that of Arthur Pauls. Additionally, Dr. Jack Roberts testified that all of the lacerations received by Pauls would leave permanent scars.

Dr. Eugene Voltolina, a psychiatrist, testified for defendant. He had

been treating defendant since March 1978 for an organic brain disorder which he diagnosed as a paranoid state. This paranoid state was attributed to a chemical imbalance involving a substance called dopomine. To treat defendant he prescribed dilantin and navane. In August 1978, defendant stopped taking the drugs. This caused him to return to the aforementioned paranoid state. Dr. Voltolina stated that defendant was psychotic when he saw him on October 28, 1978. He also stated that at the time of the attack on Pauls, defendant was suffering from a mental disease and was unable to conform his conduct to the requirements of law. At the time of trial defendant was again taking the prescribed medication.

Defendant testified that he is a college graduate. In October 1978, he was employed as an apprentice electrician and had completed 3½ years of his four-year apprenticeship. He first saw Dr. Voltolina in March 1978, when he was hospitalized at Christ Community Hospital. It was then that he learned about the problem with his brain. He took prescribed drugs from the time he was released from the hospital until August 1978. On October 23, 1978, he went to the house he and his former wife Doreen owned at Doreen's request. He and Doreen were separated at the time. He had mailed her a support check but had forgotten to sign it. Doreen told him she wanted him to come over and make the check good. When he arrived at the house he parked in the driveway. Pauls came out of the house yelling and cursing at him. He tried to tell Pauls why he was there, but Pauls would not listen. As defendant walked back to his car, Pauls ran toward the car and told defendant he would blow him away if he did not leave. Pauls' dog jumped into his car, and he told Pauls to get the dog out. Pauls yelled at the dog, and when the dog did not move, defendant kicked the dog. The dog jumped out of the car. Pauls came toward defendant and punched him in the face. Defendant travelled four or five feet from the blow. Pauls came toward him. As he turned he noticed another man (Galvin) running down the steps toward him. He and Pauls began exchanging blows and Galvin began kicking him. He reached into his rear pocket and pulled out the knife. He opened the knife and turned toward Pauls. He and Pauls started wrestling, and he was swinging both arms at Pauls. His left arm contained the knife. Pauls stopped fighting, so he stopped fighting and got up. He turned his back, put the knife away, backed his car out of the driveway, and waited in front of the house for the police to arrive.

The State called two rebuttal witnesses. Dr. Gilbert Bogen, a psychiatrist, testified that he examined defendant on October 28, 1978. He stated that on that date defendant was not suffering from any mental disease or defect. He diagnosed defendant as having an explosive personality. In his opinion, on October 23, 1978, defendant could understand the nature of the offense and could conform his conduct to the require-

ments of the law. Dorothy I. Zak (Doreen) testified that defendant is her former husband. She stated that she did not call defendant and ask him to come over and sign a check on October 23, 1978. The jury did not accept defendant's defenses of self-defense or insanity. The jury returned a verdict of not guilty of attempt murder, not guilty of armed violence, and guilty of aggravated battery. Defendant was sentenced to an eight-year term of imprisonment pursuant to section 5—5—3.2(b)(2).

Initially, defendant contends that the trial court abused its discretion in sentencing him to an eight-year term of imprisonment. He admits that he caused serious harm to Pauls, but he claims that the court failed to properly consider and weigh all the factors in aggravation and mitigation by placing too much weight on this one factor. He further contends that his attack on Pauls was provoked when Pauls punched him in the mouth, and thus cannot amount to a wanton or heinous act. *People v. Jones* (1979), 73 Ill. App. 3d 99, 391 N.E.2d 767; *People v. Warfel* (1979), 67 Ill. App. 3d 620, 385 N.E.2d 175.

The State urges that the trial court properly considered all applicable factors in extending defendant's sentence, and that the sentence reflects a reasonable attempt to match the sentence to the offender as well as to the offense. (*People v. Lewis* (1980), 89 Ill. App. 3d 15, 410 N.E.2d 1047.) The State claims that the court had before it for consideration the evidence introduced at trial which established that defendant stabbed and slashed the helpless, unarmed Pauls 26 times as he attempted to crawl away from defendant; the evidence introduced at defendant's bond revocation hearing which established that after Pauls testified against defendant at trial, defendant attempted to run him and his sister down in the courthouse parking lot; and the evidence introduced at the hearing in aggravation and mitigation. That evidence established that on March 13, 1978, defendant threw a plate of food at his wife hitting her in the back. Later that night he broke his wife's clock radio, mirror, all her makeup, and all her perfume. As a result of this incident he pled guilty to disorderly conduct. He was sentenced to six months' probation and ordered to stay away from his wife, her family, and the marital home. However, on March 14, 1978, defendant turned on all the gas at the marital residence while his wife was at work. She was called home from work and arrived to smell a strong odor of gas. She observed that the stove had been pulled away from the wall. Later that evening defendant started a fire at the marital home which caused damage in the amount of $19,000.

■■ We have examined the record, and we find ample evidence in the record to sustain the extended-term sentence. (*People v. Lewis.*) The record supports the State's position that the trial court had before it and did consider all of the factors it was required to consider in aggravation and mitigation. (*People v. Fugitt* (1980), 87 Ill. App. 3d 1044, 409 N.E.2d

537.) Moreover, at the time of sentencing, the trial court gave a thorough and detailed explanation of how it arrived at the sentence imposed. We do not agree with defendant that the *Jones* and *Warfel* cases support his position, for in both *Jones* and *Warfel*, as in the instant case, the defendant and not the victim, was found to be the aggressor. The trial court found that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. We agree with the State that the trial court did not abuse its discretion in arriving at this determination.

■■ Defendant's second contention is that the trial court erred when it refused to give jury instructions and jury verdict forms for each of the three counts of aggravated battery with which he was charged. Instead, the court gave State's instructions 15 and 16 which joined together the three counts of aggravated battery. The court also submitted to the jury one general verdict form for guilty of aggravated battery, one for not guilty of aggravated battery, and one for not guilty of aggravated battery by reason of insanity. Defendant urges that the jury should have been instructed separately on each count, and that there should have been three verdict forms submitted to the jury for each separate count of aggravated battery. Defendant claims that the effect of giving one instruction and one verdict form for three separate counts was to confuse the jury. He suggests that the jury must have felt that it must find him guilty of one count. He also urges that the use of only one verdict form makes it impossible to determine what the jury's findings were.

The State urges that the trial court did not err in submitting to the jury the two jury instructions proposed by the State regarding aggravated battery, and the three general verdict forms. The State claims that this was not error because the three counts arose out of the same transaction, and the punishment imposed was one that was authorized for any of the three counts. The State contends that regardless of the three counts charged, only one aggravated battery offense was alleged. The State claims further that the instructions were written in plain language and were not confusing to the jury. They state that it was not impossible to determine what the jury's findings were since the jury found defendant guilty of aggravated battery.

This court has recently passed on this issue in *People v. Lloyd* (1981), 93 Ill. App. 3d 1018, 418 N.E.2d 131, and held that where a general verdict of guilty is returned on an indictment which contains several counts arising out of the same transaction, the defendant is considered guilty on each count. The court also held that if the punishment imposed is authorized for the offense charged in any one or more of the counts, the verdict must be sustained. We find the *Lloyd* case is dispositive of this issue, and the trial court did not err when it refused to give the jury instructions and the jury verdict forms requested by defendant.

■■ Defendant next contends that section 5—5—3.2(b)(2) providing for the extended sentence is unconstitutional. He claims that the statute is unconstitutionally vague because it permits the court to arbitrarily exercise its discretion to determine what is exceptionally brutal or heinous behavior indicative of wanton cruelty, and then again permits the court to exercise its discretion to determine whether or not to impose an extended term.

The State contends that this question has recently been passed on by this court, and that the statute in question has been determined not to be unconstitutionally vague. (*People v. Turner* (1981), 93 Ill. App. 3d 61, 416 N.E.2d 1149.) In *Turner* the court examined the statute and concluded that the definitions of the words in the statute are commonly understood by the general public. Thus, the words of the statute provide adequate guidelines to enable the sentencing court to base the imposition of an extended term on articulable circumstances surrounding the offense. (*People v. Turner*. See also *People v. Bayless* (1981), 99 Ill. App. 3d 532, 425 N.E.2d 1192.) We agree with the State that the statute in question is not unconstitutionally vague, and that *People v. Turner* is dispositive of this issue.

■■ Finally, defendant contends that the application of section 5—5—3.2(b)(2) amounts to cruel and unusual punishment by imposing a sentence which is out of proportion to the offense committed. *Weems v. United States* (1910), 217 U.S. 349, 54 L. Ed. 793, 30 S. Ct. 544; *O'Neil v. Vermont* (1892), 144 U.S. 323, 36 L. Ed. 450, 12 S. Ct. 693.

The State urges that it is the province of the legislature to decide whether evil exists, and what means are appropriate to prevent that evil. (*People v. Houston* (1976), 43 Ill. App. 3d 677, 357 N.E.2d 184.) In this connection, unless the penalty prescribed is so disproportionate to the offense that it shocks the moral sense of the community, or is cruel or degrading, or is outside the statutory limits, it is not unconstitutional. *People v. Ballinger* (1973), 53 Ill. 2d 388, 292 N.E.2d 400; *People v. Houston.*

We observe that the penalty imposed on defendant falls within the statutory limit, and we agree with the State that the penalty prescribed is not otherwise shocking or cruel, and is therefore not unconstitutional for any of the grounds asserted by defendant. *People v. Houston.*

Defendant also claims that section 5—5—3.2(b)(2) unconstitutionally denies him the right to trial by jury. He urges that the statute invades the province of the jury, and requires the trial court, and not the jury, to determine whether the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The State responds to defendant's claim by asserting that it is the responsibility of the trial court, and not the jury, to impose a sentence on convicted persons, and that the

challenged statute does not invade the province of the jury. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 892.

For the reasons set forth herein the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG and O'CONNOR, JJ., concur.