THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL ANDREWS, Defendant-Appellant.

Fifth District    No. 80-453

Opinion filed April 6, 1982.

John H. Reid and John W. McGuire, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Martin N. Ashley and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

After a jury trial in the circuit court of St. Clair County, defendant, Michael Andrews, was found guilty of murder and was sentenced to 60 years' imprisonment. On appeal defendant contends that: (1) certain photographs depicting defendant reenacting the offense were erroneously admitted into evidence on behalf of the State; (2) the trial court abused its discretion in considering, in aggravation of the offense, that defendant inflicted serious bodily injury upon the victim; and (3) defendant was improperly sentenced to an extended term. Following oral argument before this court, defendant sought leave to raise and brief an additional issue, that (4) the extended-term provisions of the present Illinois sentencing act are unconstitutionally vague. The State having concurred in that request, this court granted leave to both parties to brief the constitutional issue.

The evidence adduced by the State at trial was as follows: Lou Ann Laytham testified that her 16-month-old son, Samuel, was one of about 12

children left in the care of the defendant and an older child, who was 13 years of age. Samuel was in good health when she last saw him alive. A pathologist who performed an autopsy on Samuel found numerous recent neck injuries including severe bruises, broken bones, and enough blood in the airways to have caused death by asphyxia. The windpipe was crushed. In the pathologist's opinion, Samuel was alive when these injuries were caused; these injuries were inflicted by a "significant amount of force," the cause of death being strangulation. A St. Clair County detective testified that defendant admitted that "he sat on the boy with his right leg across his face, his mouth, and used his hand, put his hand around his neck." The detective asked defendant to explain how he sat on Samuel and drew a figure representing Samuel on two sheets of cardboard stapled together so that defendant might better demonstrate what had happened. When defendant demonstrated, another detective took photographs of the demonstration. Defendant was aware that he was being photographed. Three such photographs were admitted in evidence at trial and accompany the record on appeal. (People's exhibits Nos. 6, 7, and 8.) Various other photographs were also admitted in evidence but do not accompany this record. These included photographs of Samuel taken just prior to the autopsy. A statement which defendant gave to the detectives and which one detective reduced to writing was read to the jury as follows:

> "I was watching T.V. and I got up and went into the kitchen and got a glass of tea. When I got in the kitchen, Ricky and David were horsing around and stomped on my feet and I told them to settle it down, that there were kids sleeping. They went into the dining room. I then sat my tea down on top of the television and went over to the crib and put the nipple back into Katherine E. Andrew's mouth. Then I went back and sat down to watch T.V. All of a sudden I got up and I wanted to hurt somebody, so I went to the couch and I sat across Samuel and put my leg, right, across his mouth, and put my hands around his throat and thought just how much I hated Mama's boys. Samuel was on his back and I sat behind him with my legs across him. Still thinking how much I hated Mama's boys. I squeezed his neck a little bit and he stopped kicking. Samuel went limp and I thought he had just lost his breath. When I got up he wheezed and kicked around a little bit, so I thought he was all right. Then I flipped him over on his belly. This is all—this all happened around one or 1:30 p.m."

Defendant did not testify in his own behalf. A two-year acquaintance of his testified that defendant's reputation in the community was that of a nonviolent person. The only other witness called in defendant's behalf was one of the detectives present when defendant's statement was taken.

Defendant contends on appeal that People's exhibits Nos. 6, 7, and 8 were erroneously admitted in evidence contrary to the standard expressed in *People v. Crowe* (1945), 390 Ill. 294, 303-04, 61 N.E.2d 348, 353, where it was stated: "Photographs of a scene or objects which have been posed or arranged by one party, for the purpose of taking the photograph, in the way or manner sought to be shown are not admissible." The State now argues that the contention is waived because defendant failed to object on this basis at trial, instead arguing only that the photographs were cumulative. We agree. An objection to evidence, based upon a specific ground, is a waiver of objection on all grounds not specified. *People v. Washington* (1962), 23 Ill. 2d 546, 179 N.E.2d 635.

■■ Additionally, we find defendant's contention to be without merit. The photographs were offered and admitted not because they accurately depicted the offense but rather because they accurately depicted a portion of defendant's statement to the detectives. As such, and together with one detective's testimony that the photographs accurately portrayed what he saw, the photographs satisfied the primary test of admissibility, (1) relevancy and (2) accuracy. (See *People v. Donaldson* (1962), 24 Ill. 2d 315, 181 N.E.2d 131; *People v. Byrd* (1976), 43 Ill. App. 3d 735, 357 N.E.2d 174.) In the instant case, defendant does not contend, nor do we believe, that the trial court erred in permitting the detective to describe defendant's demonstration of the offense. The photographs in question were a proper visual aid to the jury in understanding that testimony. See *People v. Ardella* (1971), 49 Ill. 2d 517, 276 N.E.2d 302.

We find that defendant has misplaced his reliance on *People v. Crowe* and *French v. City of Springfield* (1976), 65 Ill. 2d 74, 357 N.E.2d 438. In both cases, the evidence was offered by one party to show a demonstration staged by that party to support its theory of the case. In the instant case, the party offering the exhibits is not the party which performed the demonstration. Further, defendant does not contend on appeal that his performance was involuntary or that the photographs are misleading.

■■ Defendant next urges that the trial court erroneously considered, as an aggravating factor in imposing sentence, that defendant caused "serious bodily injury," contending that such factor is necessarily present in every murder. Defendant argues that the infliction of bodily harm is implicit in every murder and that the legislature has provided what it considers the appropriate punishment for murder. However, defendant's argument fails to recognize the fact that sections 5—5—3.1(a)(1) and 5—5—3.2(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1(a)(1), 1005—5—3.2(a)(1)) specify that the sentencing court may take into account in sentencing a defendant both the presence of and the absence of evidence that the defendant caused or threatened serious

physical harm to another. The absence of such factor may be considered by the court in mitigation of punishment under section 5—5—3.1(a)(1), while its presence may be considered in aggravation of punishment under section 5—5—3.2(a)(1). When these two factors are applied to the case at bar, it seems obvious that they were a proper subject of consideration by the trial court. First, did defendant's conduct neither cause nor threaten serious physical harm? It did because it led to the ultimate physical harm, the death of the victim. Second, since such conduct resulted in the victim's death, it may be said that defendant's conduct caused or threatened serious physical harm for the same reason. In this regard, although the consequences are identical, a defendant who tortures his victim to death should expect to receive a more severe punishment than a defendant who did not physically participate in terminating the victim's life but who is guilty of murder on the theory of accountability. Therefore, we conclude that in a conviction for murder it is not impermissible for the sentencing court to consider the force employed and the physical manner in which the victim's death was brought about. *Cf. People v. Tolliver* (1981), 98 Ill. App. 3d 116, 424 N.E.2d 44.

■■ Next, we consider defendant's contention that the statute permitting a court to impose an extended term of imprisonment, under which defendant was sentenced to 60 years' imprisonment, is unconstitutional. Under the statute, an extended term of imprisonment for not more than 80 years may be imposed for murder only where the offense is "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.2(b)(2), 1005—8—2(a).) Our legislature utilized the same language in section 5—8—1(a)(1) of the Unified Code of Corrections, which authorizes natural life imprisonment. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1).) In *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344, our supreme court held that that phrase, as used in section 5—8—1(a)(1), is not unconstitutionally vague. We find *La Pointe* dispositive of the instant issue.

■■ Finally, defendant contends that the imposition of an extended term of imprisonment was not appropriate in the case at bar. Defendant urges that the victim's death resulted from an instantaneous killing, and that, as such, it was not "accompanied" by exceptionally brutal or heinous behavior indicative of wanton cruelty. Again, we find *La Pointe* dispositive of the issue. In *La Pointe* the defendant was convicted of the murder of a cab driver during a robbery. As summarized by the supreme court, the evidence regarding the circumstances of the shooting consisted of defendant's admission to a friend that he shot the driver in the head and police officers' testimony that they found the victim shot twice in the head from behind. Our supreme court, reversing the appellate court, determined that the trial court had properly imposed a sentence of natural life

imprisonment without parole. It does not appear that the behavior "accompanying" the murder in *La Pointe* was more reprehensible than that occurring in the instant case. We believe the instant offense was at least equally as brutal and heinous as that in *La Pointe,* in that it involved the senseless strangulation of a helpless infant. In our view, the trial court did not err in imposing an extended term sentence of 60 years' imprisonment in this case.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.


Affirmed.


KARNS, P. J., and JONES, J., concur.