**UNITED STATES of America, ex rel. Phillip PEEPLES, Petitioner,**

**v.**

**James GREER, et al., Respondents.**

**No. 83–2035.**

United States District Court,
C.D. Illinois,
Danville Division.

June 14, 1983.

Charles M. Schiedel, Asst. State Appellate Defender, Daniel Yuhas, Deputy State Appellate Defender, Springfield, Ill., for petitioner.

James V. Cinotto, Asst. Atty. Gen., Springfield, Ill., for respondents.

## ORDER

BAKER, District Judge.

This case raises the question of whether the due process clause of the Fourteenth Amendment prevents the imposition of an extended term of imprisonment under sentencing procedures which create a substantial risk that the term will be imposed in an arbitrary and capricious manner.

The petitioner, Phillip Peeples, is an indigent inmate at Menard Correctional Center. He has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. The petitioner has exhausted his state remedies as required by 28 U.S.C. § 2254(b).

Peeples presents two claims in his petition. First, he argues that the state statute providing for the imposition of an extended sentence violates due process because the statute is vague and permits the arbitrary and capricious imposition of an extended sentence. Second, Peeples argues that the imposition of the extended sentence constitutes cruel and unusual punishment. The challenged statute provides that an extended term of imprisonment may be imposed by the court "[w]hen a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill.Rev.Stat. ch. 38, § 1005–5–3.2(b)(2) (1979).

After considering the petition, the answer, the transcript of the petitioner's state court trial, and the applicable case law, the court concludes that the petition should be denied.

## I.

The facts relating to the petitioner's conviction are not in dispute and are fully set

forth in the order of the Illinois Appellate Court affirming the petitioner's conviction. Briefly, the body of a young, substitute librarian was found in the library of a Champaign, Illinois elementary school during the noon hour. Her throat had been slashed and her clothing had been pushed above her waist. Expert evidence established that she had been molested sexually.

At the time of the offense, the petitioner was employed as a part-time maintenance man at the school. He was classified as an educable mentally handicapped individual, with an I.Q. of approximately 66. He was observed about noontime in the maintenance room which is directly across from the library. A short time later he was again observed in the lunchroom. At that time, large wet stains were seen on his trousers. The petitioner explained the stains by saying that he had run into a small boy carrying red paint. Somewhat later another individual observed stains on the petitioner's socks and leg and, when asked about the stains, the petitioner said that the stains originated from a cut on his leg. No cut was found on the petitioner's leg. At about the same time, the body of the young librarian was discovered; the police were summoned; and the petitioner was arrested.

Expert evidence established that the rag found stuffed into the victim's mouth matched another rag found in the maintenance room. A razor blade found under the body of the victim had been fabricated by the same machine as other razor blades found in the maintenance room. Blood grouping tests showed that the blood on the petitioner's clothing could have come from the victim and was not the petitioner's blood. Pubic hair combings from the victim revealed hairs which could have come from the petitioner and pubic hair found in the petitioner's clothing matched those of the victim in every significant microscopic characteristic.

The petitioner's defense was that he was a person of good character. He also presented the testimony of a psychiatrist who said that the petitioner, who was eighteen, was retarded with the mental capacity of the average eleven and one-half year old. The psychiatrist equivocated in his testimony as to whether the petitioner could conform his conduct to the requirements of the law or appreciate the criminality of his conduct.

In rebuttal the state presented a clinical psychologist who testified that the defendant was retarded but not severely. The psychologist further testified that he found no signs or symptoms which would lead him to believe that the petitioner lacked sufficient capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

In a bench trial the court found the petitioner guilty of murder and sentenced him to an extended term of 80 years pursuant to § 5–8–2(a)(1) of the Unified Code of Corrections which permits an extended term of imprisonment for murder. See Ill.Rev.Stat. ch. 38, § 1005–8–2(a)(1) (1979). Specifically, the judge found that the petitioner's offense had been accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. See Ill.Rev.Stat. ch. 38, § 1005–5–3.2(b)(2) (1979). On July 22, 1981, the Illinois Appellate Court, in an unpublished opinion, affirmed the petitioner's conviction for murder. The Illinois Supreme Court denied leave to appeal on November 30, 1981.

## II.

The petitioner bases his argument that the statute under which he was sentenced is vague and ambiguous and permits the arbitrary and capricious imposition of extended imprisonment on *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (plurality). In *Godfrey v. Georgia* the United States Supreme Court found a Georgia statute unconstitutional which permitted the imposition of the death penalty if the jury found that the offense "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." The Court said the statute was unconstitutionally vague as applied to the

petitioner in that it allowed the arbitrary and capricious imposition of the death penalty.

Peeples argues that the reasoning of *Godfrey v. Georgia* applies equally to the Illinois statute challenged here. Specifically, the petitioner argues that no clear, objective criteria guide the application of the Illinois statute and that no restraint exists on the arbitrary and capricious infliction of the enhanced penalty allowed under the statute. Finally, the petitioner argues that no meaningful basis exists for distinguishing the few cases in which an extended term of imprisonment has been imposed from the other cases where an extended term has not been imposed. *See Godfrey v. Georgia,* 446 U.S. at 427–28, 100 S.Ct. at 1764–65.

The petitioner's second position is that the imposition of an extended term of imprisonment constitutes cruel and unusual punishment because his limited mental abilities prevented him from formulating the necessary mental state to merit the imposition of an extended term. Apparently the petitioner is arguing that he does not have the mental ability to commit a crime accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

### III.

In their memorandum of law opposing the issuance of the writ, the respondents first argue that the claims raised by the petitioner have been rejected repeatedly by the Illinois courts. *See People v. LaPointe,* 88 Ill.2d 482, 59 Ill.Dec. 59, 431 N.E.2d 344 (1982); *People v. Andrews,* 105 Ill.App.3d 1109, 61 Ill.Dec. 865, 435 N.E.2d 706 (5th Dist.1982); *People v. Kulpa,* 102 Ill.App.3d 571, 58 Ill.Dec. 222, 430 N.E.2d 164 (1st Dist.1981); *People v. Devine,* 98 Ill.App.3d 914, 54 Ill.Dec. 73, 424 N.E.2d 823 (3rd Dist.1981); *People v. Turner,* 93 Ill.App.3d 61, 48 Ill.Dec. 627, 416 N.E.2d 1149 (1st Dist.1981); *People v. Merchel,* 91 Ill.App.3d 285, 46 Ill.Dec. 751, 414 N.E.2d 804 (5th Dist.1980); *People v. Nobles,* 83 Ill.App.3d 711, 38 Ill.Dec. 906, 404 N.E.2d 330 (4th Dist.1980).

The Illinois courts, the respondents assert, have defined the words in the statute and have given these words their ordinary, popularly understood meaning. *See People v. LaPointe,* 88 Ill.2d 482, 499, 59 Ill.Dec. 59, 431 N.E.2d 344 (1982). The respondents point out that the Illinois Appellate Court did define the statutory terms in its unpublished order affirming Peeples' conviction for murder. *See People v. Peeples,* 97 Ill. App.3d 1202, 55 Ill.Dec. 914, 426 N.E.2d 1288 (4th Dist.1981), pages 4–6. Consequently, they urge that the Illinois statute is not vague and that it does not permit the arbitrary and capricious imposition of an extended term of imprisonment. Moreover, in *People v. Merchel,* 91 Ill.App.3d 285, 294, 46 Ill.Dec. 751, 414 N.E.2d 804 (5th Dist. 1980), the court determined that the statute provided a meaningful basis for distinguishing the cases in which the penalty was imposed from the many cases in which it was not.

The respondents argue that the rationale established in *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), should not apply to the statute questioned in this petition. The respondents say the statute in *Godfrey v. Georgia* merited closer scrutiny than the statute here because the Georgia statute dealt with the death penalty and not with an extended term of imprisonment. The respondents rely upon *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), to establish that the language in the Illinois statute need not be held unconstitutionally vague.

Finally, the respondents say that the imposition of the extended term of imprisonment was merited in Peeples' case and that both the trial court and the appellate court made that determination. The respondents properly observe that a state court's findings of fact are entitled to a presumption of correctness under § 2254(d) and *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

## IV.

The due process issue raised by this petition apparently is one of first impression which has not been considered by any federal court sitting in Illinois. *Cf. United States ex rel. Hudson v. DeRobertis,* No. 82–4048 (N.D.Ill. Feb. 7, 1983) (in which the petitioner did not challenge the constitutionality of his extended sentence but argued that the trial judge abused his discretion in sentencing the petitioner to an extended term of imprisonment).

Peeples is not challenging the length of his imprisonment. He is not arguing that his 80 year sentence is so grossly disproportionate to his crime that the sentence is cruel and unusual punishment proscribed by the Eighth and Fourteenth Amendments. *Cf. Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam); *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). Indeed, if the statute provided that the penalty for murder was a term of imprisonment between 20 and 80 years, the petitioner could not challenge his 80 year sentence as violative of the Eighth Amendment. The United States Supreme Court has never held a sentence for a term of years within statutory limits to be, by itself, cruel and unusual punishment. *See Hutto v. Davis,* 454 U.S. at 372, 102 S.Ct. at 704.

Peeples is challenging the Illinois statute as violative of the Fourteenth Amendment due process clause. He claims that the statute's vagueness permits the arbitrary and capricious enforcement of its provisions and that the statute violates the principles announced in *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

*Godfrey v. Georgia* dealt with the imposition of a death sentence by a state court, and a sharp distinction may be drawn between the imposition of a death sentence and the imposition of an extended term of imprisonment. In *Hutto v. Davis,* the Supreme Court analyzed its decision in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), and distinguished between death and punishments which differ from each other only in duration. *Hutto v. Davis,* 454 U.S. at 373, 102 S.Ct. at 704–705. *Hutto v. Davis* and *Rummel v. Estelle* dealt with Eighth Amendment violations, however, and not with assertions of vagueness under the due process clause of the Fourteenth Amendment.

## V.

To assess adequately the claim that the statute's vagueness allows the arbitrary and capricious imposition of an extended term of imprisonment, three decisions need discussion, namely, *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); and *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

In *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (plurality),[1] the Supreme Court dealt with a Georgia statute which provided that a person convicted of murder could be sentenced to death if the jury found beyond a reasonable doubt that the offense "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." *Id.* at 422, 100 S.Ct. at 1762. The Court determined that the Georgia Supreme Court had adopted such a broad and vague construction of the statute that, as applied to the petitioner, the statute violated the Eighth and Fourteenth Amendments to the United States Constitution. *Id.* at 432–33, 100 S.Ct. at 1766–67.

In *Godfrey v. Georgia,* the petitioner had been convicted of murder and sentenced to die by a Georgia jury. The evidence pro-

---

1. In *Godfrey v. Georgia,* the plurality decision was authored by Justice Stewart and was joined by Justices Blackmun, Powell and Stevens. Justices Marshall and Brennan concurred in the judgment. The two concurring Justices agreed with the plurality's conclusion that the state sentencing statute was unconstitutionally vague, but would have further concluded that imposing the death penalty is in all circumstances cruel and unusual punishment. 446 U.S. at 433–35, 437, 100 S.Ct. at 1767–68, 1769.

duced at trial demonstrated that the petitioner's offense was indeed horrible. After a domestic quarrel, the petitioner killed his wife and his mother-in-law and injured his daughter. Nonetheless, the Court reaffirmed its prior holding that the penalty of death could not be imposed under a sentencing procedure that created a substantial risk that the punishment would be inflicted in an arbitrary and capricious manner. *Id.* at 427, 100 S.Ct. at 1764. Basically, the Court was concerned that the state statute allowing the imposition of the death penalty provided no objective criteria for the imposition of the penalty. The Court noted that while the statute had been upheld on its face in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), at that time the Georgia courts had provided objective criteria for applying the death penalty. *See generally Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (per curiam). Specifically, the Georgia courts had applied the death penalty only if the offense had involved some type of torture or aggravated battery. The Court considered the criteria of "torture" or of "an aggravated battery" as objective criteria. 446 U.S. at 426, 430–32, 100 S.Ct. at 1763, 1765–67.

In *Godfrey v. Georgia,* however, no such objective criteria were evident. No evidence was produced at trial that showed that the petitioner had in any way tortured his victims or had committed an aggravated battery. Consequently, the Court could not determine why the death penalty had been imposed in the *Godfrey* case and not in other cases. *Id.* at 433, 100 S.Ct. at 1767.

*Godfrey v. Georgia* reaffirmed the established guidelines for imposing the death penalty. First, the state statute and the state courts must provide clear and objective standards that give specific and detailed guidance and make rationally reviewable the process for imposing capital punishment. 446 U.S. at 428, 100 S.Ct. at 1764. The state statute and the state courts must provide a meaningful basis for distinguishing the few cases in which the penalty is imposed from the many cases in which it is not. *Id.* In short, the United States Supreme Court was concerned that juries might impose the death sentence merely because they were shocked and outraged by the vile nature of the defendant's actions. As the Court noted, almost all murders are vile and shocking and a jury must not be allowed unguided and standardless discretion when considering imposition of the death penalty. *Id.* at 429, 100 S.Ct. at 1765.

In *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the Court dealt with the constitutionality of a Florida statute providing for capital punishment. The Court determined that imposing the death sentence for murder under Florida law did not violate the Eighth and Fourteenth Amendments.

In Florida if the defendant is found guilty of a capital offense, a separate evidentiary hearing is held before the judge and jury to determine the sentence. During this evidentiary hearing evidence is presented which must include matters relating to certain legislatively specified aggravating and mitigating circumstances. At the conclusion of the hearing the jury is directed to determine whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances of the crime and then determine whether based on these considerations the defendant should be sentenced to life imprisonment or to death. *Id.* at 248, 96 S.Ct. at 2964–65. Under the Florida procedure the jury's verdict is advisory only. The actual sentence is determined by the trial judge. *Id.* at 249, 96 S.Ct. at 2965.

The trial judge also must weigh the statutory aggravating and mitigating circumstances. If the trial court decides to impose a sentence of death, the court must set forth in writing its findings upon which the determination is based. Specifically, the trial judge must weigh eight aggravating factors against seven mitigating factors to determine whether the death penalty should be imposed. *Id.* at 251, 96 S.Ct. at 2966. This determination requires the trial judge to focus on the circumstances of the

crime and the character of the individual defendant.

The trial judge must consider whether the defendant had a prior criminal record, whether the defendant acted under duress or under the influence of extreme mental or emotional disturbance, whether the defendant's role in the crime was that of a minor accomplice, and whether the defendant's youth argues in favor of a more lenient sentence than might otherwise be imposed. The trial judge must also determine whether the crime was committed in the course of one of several enumerated felonies, whether it was committed for pecuniary gain, whether it was committed to assist in an escape from custody or to prevent a lawful arrest and whether the crime was especially heinous, atrocious, or cruel. *Id.*

*Proffitt v. Florida* noted a basic difference between the Florida system and the Georgia system: in Florida the sentence is determined by the trial judge; in Georgia the sentence is determined by the jury. *Id.* at 252, 96 S.Ct. at 2966. The Court said:

it would appear that judicial sentencing should lead, if anything, to even greater consistency in the imposition at the trial court level of capital punishment, since a trial judge is more experienced in sentencing than a jury, and therefore is better able to impose sentences similar to those imposed in analagous cases.

*Id.* at 252, 96 S.Ct. at 2966 (citation omitted). The United States Supreme Court determined that the Florida sentencing procedure assured that the death penalty would not be imposed in an arbitrary or capricious manner.

Under the Florida procedure trial judges were given specific and detailed guidance to assist them in deciding what sentence to impose. *Id.* at 253, 96 S.Ct. at 2967. To the extent that any risk of arbitrariness or capriciousness existed, it was minimized by Florida's appellate review system under which the evidence of the aggravating and mitigating factors was reviewed and reweighed by the Supreme Court of Florida. *Id.* at 253, 96 S.Ct. at 2967. In Florida, the Court determined that it was no longer true

that no meaningful basis existed for distinguishing the few cases in which the death penalty was imposed from the many cases in which it was not. *Id.* at 253, 96 S.Ct. at 2967. The Florida statutory system satisfied the Eighth and Fourteenth Amendments.

*Proffitt v. Florida* also dealt with the claims that the enumerated aggravating and mitigating factors were so vague and broad that they allowed for the arbitrary and capricious imposition of the death penalty. Specifically, *Proffitt v. Florida* attacked the eighth and third statutory aggravating factors which authorize imposing the death penalty if the crime was "especially heinous, atrocious, or cruel" or if "the defendant knowingly created a great risk of death to many persons." *Id.* at 255, 96 S.Ct. at 2968. The Supreme Court analyzed these statutory aggravating factors in light of the construction placed on these words by the Supreme Court of Florida.

The state supreme court had previously indicated that the eighth statutory provision, relating to "especially heinous, atrocious, or cruel" behavior, was directed only at "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *Id.* at 255, 96 S.Ct. at 2968 (citations omitted). The Supreme Court concluded that it could not state that this provision provided inadequate guidance to the trial court. Neither was the third aggravating factor—"the defendant knowingly created a great risk of death to many persons"—impermissibly vague. *Id.* at 256, 96 S.Ct. at 2968.

There is some inconsistency between *Godfrey v. Georgia* and *Proffitt v. Florida.* In *Proffitt v. Florida,* the eighth aggravating factor providing for the imposition of the death penalty if the crime was "especially heinous, atrocious, or cruel" was not unconstitutionally vague on its face. In *Godfrey v. Georgia,* the language providing for the death penalty if the crime was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim," was unconstitutionally vague as applied to

the petitioner and allowed for the arbitrary and capricious imposition of capital punishment.

Two possible explanations exist. First, in *Godfrey v. Georgia,* the Supreme Court was clarifying and further explaining its decisions in *Gregg v. Georgia* and *Proffitt v. Florida.* Second, the inconsistency between *Proffitt v. Florida* and *Godfrey v. Georgia* may be explained by the fact that the judge imposes the sentence in Florida but the jury imposes the sentence in Georgia. Both explanations have merit.

*Godfrey v. Georgia* did elucidate the principles established in *Gregg v. Georgia* and *Proffitt v. Florida.* Furthermore, the Court certainly drew a distinction between a state sentencing statute in which the sentencing authority is the state court judge rather than a jury of inexperienced lay persons.

■ Under the Illinois statute here, the sentencing authority is the trial judge. The issue presented then is whether that fact alone should preclude the application of the principles established in *Godfrey v. Georgia* to this case. In short, does the Fourteenth Amendment permit a state court judge to impose an extended term of imprisonment under a state sentencing provision which provides no clear, specific, and objective guidelines for the judge? The rationale that runs through *Gregg v. Georgia, Proffitt v. Florida* and *Godfrey v. Georgia,* is that such a sentencing provision is invalid under the Eighth Amendment as applied to the States through the Fourteenth Amendment. This court rejects the argument that because the sentencing authority is a judge, rather than a jury, the statute need not provide clear and objective criteria to guide the sentencing authority.

## VI.

Peeples was convicted of murder in violation of Ill.Rev.Stat. ch. 38, § 9–1 (1979). Pursuant to Ill.Rev.Stat. ch. 38, § 1005–8–1(a)(1) (1979), Peeples could have been sentenced to a term of not less than 20 years and not more than 40 years. The sentencing judge, however, sentenced Peeples to an extended term of imprisonment pursuant to

Ill.Rev.Stat. ch. 38, § 1005–8–2(a)(1) (1979). Such an extended term is merited, the statute provides, if the court finds any of the aggravating factors listed in Ill.Rev.Stat. ch. 38, § 1005–5–3.2 (1979). At the sentencing hearing held on October 30, 1980, the trial court specifically found that the petitioner's offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. *See* Ill.Rev.Stat. ch. 38, § 1005–5–3.2(b)(2) (1979).

During the hearing the prosecutor referred to evidence which tended to show that the victim had reacted to the slashings by grabbing her head and trying to stop the flow of blood on her body. *See* Transcript of Sentencing Hearing held on October 30, 1980 at 23. Evidence presented at trial also demonstrated that the victim had been sexually molested, either before or after her throat had been slashed. At the hearing the sentencing court rejected Peeples' argument that the Illinois sentencing statute was unconstitutionally vague and allowed for the arbitrary and capricious imposition of an extended term of imprisonment. *See* Transcript at 56–58. The state trial judge stated:

> [t]hat it could be seriously contended that somehow exceptionally brutal or heinous behavior is a difficult concept to understand is beyond me, and I don't think that the Court is prohibited from considering those terms and applying those words simply because of the argument that if you do then every murder would be brutal and heinous and I don't believe that I need in this case the State's Attorney's description of what he believes how the events precisely occurred for me to determine from the evidence in this case that this is clearly a case where the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

*See* Transcript at 57. The trial judge further said:

> I don't see how anyone would have any problem with applying those words to this case or understanding those words. They're not vague, and I think that any-

body who has a reasonable command of the English language and some experience with the concept that those words are trying to express, could not apply to this case.

*See* Transcript at 57. The court went on to rule that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty within the meaning of the statute. *See* Transcript at 58.

The Illinois Appellate Court's unpublished decision affirming the petitioner's conviction for murder attempted to define the words contained in the state sentencing statute. The state appellate court wrote

[s]ince the words "brutal", "heinous", "wanton", and "cruelty" evoke strong emotions in their hearers, it is probably impossible to reduce them to a precise inalterable meaning. "Brutal" is the adjectival form derived from "brute" whose etymological ancestor is the Latin word "brutus" which meant "stupid" or "irrational" in the sense of being animal-like, creatures lower than man but like him possessing senses, instincts and appetites.... "Brutal" stresses the absence of faculties or powers that are the distinctive marks of a human being's superiority, such as speech, intellect, sensibility and the like. It places emphasis on purely physical qualities and implies the ascendancy of one's physical nature over the rational and spiritual nature. Therefore, a mental state becomes irrelevant when considering "brutal" behavior.

"Heinous" is an adjective having its roots in the word "hate" and is considered synonomous with "hateful". An act is said to be heinous when it excites hatred or horror over its enormity—in the words of Chaucer "A process ... so heinous that men might on it spit."

"Brutal", then, is the subjective attitude of the actor, while "heinous" is the objective reaction upon the observer. Under these definitions whether defendant acted in a premeditated fashion is of no consequence. The facts show that his conduct was brutal, egregiously instinctive, characteristic of a lower species.

They further show that the result of this conduct would incite hatred and horror in any reasonable person.

*See* Order at pages 4–6.

The appellate court also considered and rejected Peeples' argument based on *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). The court distinguished *Godfrey v. Georgia,* holding that *Godfrey v. Georgia* did not apply to the facts in the petitioner's case. The appellate court relied on *People v. Nobles,* 83 Ill. App.3d 711, 38 Ill.Dec. 906, 404 N.E.2d 330 (4th Dist.1980), stating that:

[i]n that case the court upheld the constitutionality of the statute imposing life imprisonment under section 5–8–1(a)(1) of the Unified Code of Corrections (Ill. Rev.Stat.1979, ch. 38, par. 1005–8–1(a)(1)). We note that the language of that section is identical with the language of the extended term statute which we have been discussing. The phrase, "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty," appears in both statutes.

*See* Order at 7 and 8.

### VII.

The Illinois Supreme Court has upheld the constitutionality of another portion of the sentencing provision containing words identical to the words at issue here. In *People v. LaPointe,* 88 Ill.2d 482, 59 Ill.Dec. 59, 431 N.E.2d 344 (1982), the Illinois Supreme Court considered the constitutionality of section 5–8–1(a)(1), Ill.Rev.Stat., ch. 38 § 1005–8–1(a)(1) (1978), which authorized imposing natural life imprisonment. Under that statute the court could sentence a defendant to a term of natural life imprisonment if the court found that "the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty," words identical to the words contained in the challenged statutory provision.

In *People v. LaPointe,* the Illinois Supreme Court determined that the phrase "exceptionally brutal or heinous behavior indicative of wanton cruelty" was not unconstitutionally vague. The court noted

that "[a] statute is unconstitutionally vague if its terms are so ill defined that their meaning will ultimately be determined by the opinions and whims of the trier of fact rather than any objective criteria." 88 Ill.2d at 499, 59 Ill.Dec. 59, 431 N.E.2d 344 (citations omitted). The court went on to hold, however, that the statutory words were not vague because they had been accorded their ordinarily and popularly understood meanings. The court referred to Webster's Third New International Dictionary (unabridged) which defined "heinous" as "hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal." *Id.* at 501, 59 Ill.Dec. 59, 431 N.E.2d 344. The court found the word "brutal" to include "grossly ruthless", "devoid of mercy or compassion: cruel and cold-blooded". *Id.*

The *LaPointe* court determined that the descriptive terms employed in the section at issue there were commonly used words which clearly were not so vague and indefinite as to be unconstitutional. "Coupled with the objectives sought to be achieved and the evil the statute seeks to remedy they give sufficient direction to trial judges who must determine when and whether to impose the natural life sentence of imprisonment." *Id.* at 500, 59 Ill.Dec. 59, 431 N.E.2d 344. Finally, *LaPointe* held that the facts in that particular case merited the imposition of a life sentence. Specifically, the defendant's significant history of criminal activity, coupled with the evidence at trial showed that the defendant acted with premeditated, cold-blooded deliberation when he decided to kill a cab driver. *Id.* at 501, 59 Ill.Dec. 59, 431 N.E.2d 344. After the defendant had been arrested for the murder, and while he was being held in the county jail, he displayed a callous attitude and complete lack of remorse by wearing a T-shirt bearing the words "Elmhurst Executioner." *Id.*

In *LaPointe*, the Illinois Supreme Court reached a further legal conclusion. It rejected the defendant's argument that the statutory language permitting the imposition of a natural life imprisonment sentence where conduct is accompanied by exceptionally brutal or heinous behavior indicative of

wanton cruelty, authorized that sentence only if the defendant had inflicted torture or unnecessary pain upon his victim. *Id.* Rather, the Illinois Supreme Court relied on the fact that the descriptive words used in the sentencing statute had been accorded their natural, popularly understood, common sense definition by the state courts.

## VIII.

Every Illinois appellate court which has dealt with a challenge to the constitutionality of the sentencing provision at issue here or other portions of the sentencing statute with words identical to the words at issue here has upheld the constitutionality of that provision. In *People v. Andrews*, 105 Ill. App.3d 1109, 61 Ill.Dec. 865, 435 N.E.2d 706 (5th Dist.1982), the court rejected a defendant's argument that the language "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" was unconstitutionally vague. *Id.* at 1113, 61 Ill.Dec. 865, 435 N.E.2d 706. The *Andrews* court relied upon *People v. LaPointe*, 88 Ill.2d 482, 59 Ill.Dec. 59, 431 N.E.2d 344 (1982).

In *People v. Kulpa*, 102 Ill.App.3d 571, 58 Ill.Dec. 222, 430 N.E.2d 164 (1st Dist.1981), the court rejected the defendant's argument that section 5–5–3.2(b)(2), which provided for the imposition of an extended sentence when the court finds that a criminal offense is accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, was unconstitutional. *Id.* at 577, 58 Ill.Dec. 222, 430 N.E.2d 164. In *Kulpa*, the defendant claimed that the statute was unconstitutionally vague because it permitted the state court to arbitrarily exercise its discretion in determining what is exceptionally brutal or heinous behavior indicative of wanton cruelty. *Id. Kulpa* noted that the question had been decided by *People v. Turner*, 93 Ill.App.3d 61, 48 Ill. Dec. 627, 416 N.E.2d 1149 (1st Dist.1981).

*People v. Turner*, 93 Ill.App.3d 61, 48 Ill.Dec. 627, 416 N.E.2d 1149 (1st Dist.1981), rejected the defendant's argument that the extended term statute was unconstitu-

ally vague. There the statute provided that an extended term could be imposed if the court found that the offense was accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty." *Id.* at 68, 48 Ill.Dec. 627, 416 N.E.2d 1149. The *Turner* court noted that the test of whether a statute is vague is whether a person of common intelligence must speculate as to its meaning. In *Turner* the court defined the term "heinous" as "grossly wicked or reprehensible; abominable; odious, vile." *Id.* at 69, 48 Ill.Dec. 627, 416 N.E.2d 1149. *See* The American Heritage Dictionary of the English Language at 611.

*Turner* also dealt with the question of whether some sort of physical injury to the victim was necessary to impose an extended term. *Id.* at 69, 48 Ill.Dec. 627, 416 N.E.2d 1149. The court, however, did not squarely decide that issue. It decided that even if the sentencing statute contained the requirement of physical injury beyond that needed to kill, it was satisfied in that case. The victim was a nineteen year old girl who had been hit in the head or face five times, threatened repeatedly with death, forced into three acts of sexual intercourse, two acts of fellatio, and one act of sodomy. *Id.* The appellate court relied on the findings of the trial court. At sentencing the trial court said that the facts in the case clearly indicated heinous behavior indicative of wanton cruelty. Specifically, the trial court noted the victim's treatment by the defendant, finding the defendant's conduct shocking even to one accustomed to hearing rape cases. *Id.*

In *People v. Turner,* the court relied on some objective criteria, referring to the evidence which showed that the defendant had committed acts of violence on the victim in addition to the sexual abuse. In *Turner* the victim had been injured physically during the commission of the crime.

In *People v. Devine,* 98 Ill.App.3d 914, 54 Ill.Dec. 73, 424 N.E.2d 823 (3rd Dist.1981), the court rejected a challenge to the constitutionality on the basis of vagueness of section 5–5–3.2(b)(2) of the Unified Code of Corrections. *See* Ill.Rev.Stat. ch. 38,

§ 1005–5–3.2(b)(2) (1979). *Id.* at 925, 54 Ill.Dec. 73, 424 N.E.2d 823. *Devine* relied on *People v. Nobles,* 83 Ill.App.3d 711, 38 Ill.Dec. 906, 404 N.E.2d 330 (4th Dist.1980).

In *People v. Nobles,* 83 Ill.App.3d 711, 38 Ill.Dec. 906, 404 N.E.2d 330 (4th Dist.1980), the court upheld the constitutionality of the imposition of a life sentence on the statutory finding that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. *Id.* at 715, 38 Ill.Dec. 906, 404 N.E.2d 330. In *Nobles,* the defendant had been convicted of murdering more than one individual which was a separate and distinct aggravating factor under the sentencing statute which merited the imposition of an extended term of imprisonment. However, the court did reject the defendant's due process "void for vagueness" challenge to the sentencing statute. "The totality of the words used together requiring either the 'brutal' or 'heinous' behavior to indicate 'wanton cruelty' gives reasonable guidance to the average person and is of a design which would tend to avoid arbitrary enforcement." *Id.* at 716, 38 Ill.Dec. 906, 404 N.E.2d 330.

*People v. Merchel,* 91 Ill.App.3d 285, 46 Ill.Dec. 751, 414 N.E.2d 804 (5th Dist.1980), upheld the statutory language "exceptionally brutal or heinous behavior indicative of wanton cruelty." *Id.* at 291, 46 Ill.Dec. 751, 414 N.E.2d 804. At that time no case in Illinois had defined the statutory phrase. *Merchel* discussed the decisions of the United States Supreme Court in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) and observed that *Godfrey v. Georgia* required that a sentencing statute (1) contain clear and objective standards that provide specific and detailed guidance; (2) make rationally reviewable the process for imposing a sentence of death; and (3) provide a meaningful basis for distinguishing the few cases in which the penalty is imposed from the many cases in which it is not. *Id.* 91 Ill.App.3d at 293, 46 Ill.Dec. 751, 414 N.E.2d 804. "While the death penalty is not before

us," the *Merchel* decision noted, "these supreme court cases help to guide our consideration of the natural life provision." *Id.*

The *Merchel* court found objective standards in the language of the sentencing statute. The decision would have required a sentencing court to find: (1) that the murder be accompanied by acts which went beyond taking the victim's life; and (2) that the accompanying acts be brutal or heinous; and (3) that the acts indicate wanton cruelty. *Id.* Whether the accompanying acts were brutal or heinous or indicative of wanton cruelty could be determined by the objectively observable results of those acts—for example, the physical condition of the victim. *Id.* The words of the statute describe not the murder itself but the acts accompanying the murder. *Id.* at 294, 46 Ill.Dec. 751, 414 N.E.2d 804. Given this approach the statute provided a "meaningful basis for distinguishing the few cases in which the penalty is imposed from the many cases in which it is not," and provided reasonable guidance designed to avoid arbitrary and discriminatory enforcement. *People v. Merchel,* 91 Ill.App.3d at 293–94, 46 Ill.Dec. 751, 414 N.E.2d 804.

While *Merchel* construed the Illinois statute in conformity with the precepts of *Godfrey v. Georgia, Merchel* apparently has very little precedental value in Illinois. *Merchel* relied upon the reasoning of the Illinois Second District Appellate Court in *People v. LaPointe,* 85 Ill.App.3d 215, 41 Ill.Dec. 4, 407 N.E.2d 196 (1980) which was reversed by the Illinois Supreme Court. *Id.* 91 Ill.App.3d at 292–95, 46 Ill.Dec. 751, 414 N.E.2d 804. *See People v. LaPointe,* 88 Ill.2d 482, 59 Ill.Dec. 59, 431 N.E.2d 344 (1982).

### IX.

If *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), is interpreted as a pronouncement of due process requirements in sentencing, then the Illinois sentencing provision as construed does not channel the sentencing authority's discretion by clear and objective standards that provide specific and detailed guidance and

make rationally reviewable the process for imposing an extended term of imprisonment. But this court does not give *Godfrey v. Georgia* the broad interpretation urged by the petitioner.

■ The death penalty is cruel and unusual punishment when there is a substantial risk that it will be imposed in an arbitrary and capricious manner. That is the impact of *Furman v. Georgia, Gregg v. Georgia, Proffitt v. Florida,* and *Godfrey v. Georgia.* That limitation on a state's sentencing power is founded in the Eighth Amendment and made applicable to the states by the Fourteenth Amendment. In short, *Godfrey v. Georgia* is an Eighth Amendment case and not a Fourteenth Amendment due process case. *See Proffitt v. Wainwright,* 685 F.2d 1227, 1252–53, 1263 (11th Cir.1982); *Britton v. Rogers,* 631 F.2d 572, 579 (8th Cir.1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2021, 68 L.Ed.2d 327 (1981). The Eighth Amendment analysis of *Godfrey v. Georgia* would not apply to an extended term of imprisonment. As noted above, the United States Supreme Court has never held a term of years within statutory limits to be cruel and unusual punishment. *See Hutto v. Davis,* 454 U.S. at 372, 102 S.Ct. at 704. It follows that a substantial risk of the arbitrary and capricious imposition of an extended term of imprisonment is not cruel and unusual punishment. Is it then a denial of due process?

■ Obviously, due process would indicate that sentencing be based upon a thoughtful, orderly and informed process. Whim, caprice, and subjectivity in sentencing would offend a basic sense of fairness. "It is certainly not a novel proposition that discretion in the area of sentencing be exercised in an informed manner" *Gregg v. Georgia,* 428 U.S. at 189, 96 S.Ct. at 2932.

■ In this case, after hearing evidence in aggravation and mitigation, the trial judge found that the nature of the petitioner's acts showed exceptionally brutal or hei-

nous behavior indicative of wanton cruelty.[2] Who can gainsay the conclusion that the petitioner's conduct was animal or brute-like, devoid of reason or compassion, and showing an indifference to the victim's suffering? For this court to do so would be "interfering with factfinders in state criminal proceedings or with state courts that are responsibly and consistently interpreting state law...." *Godfrey v. Georgia,* 446 U.S. at 451, 100 S.Ct. at 1776 (White, J. dissenting). Due process does not compel the conclusion urged by the petitioner that the Illinois sentencing statute is constitutionally infirm.

## X.

█ Turning to the petitioner's second position, that he does not have the mental capacity to merit the imposition of an extended term of imprisonment, little discussion is necessary. Mental capacity is a question of fact and the trial court took the petitioner's mental capacity into consideration and weighed the conflicting testimony that was presented on that point. (Tr. Vol. IV pp. 20–53; 69–73.) *See People v. Peeples,* 97 Ill.App.3d 1202, 55 Ill.Dec. 914, 426 N.E.2d 1288 (4th Dist.1981), pages 6–7. The state court's findings of fact are presumed to be correct and a federal court will not dispute them. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

IT IS THEREFORE ORDERED the petition for habeas corpus be, and hereby is, denied.

---

**2.** The petitioner argues the statutory language is void for vagueness. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* —— U.S. ——, ——, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). See also discussion *supra* pp. —— *et seq.*